## DAVIS *et al. v.* DOUGHERTY COUNTY *et al.*

1. A general law will not be so construed as to repeal an existing particular or special law, unless it is plainly manifest from the terms of the general law that such was the intention of the lawmaking body.

2. The act of 1891 (Acts 1890-91, vol. 1, p. 241, Civil Code, § 5458), relating to the publication of notices of sales and orders by certain public officers and others, did not repeal or modify that portion of the act of 1879 (Political Code, § 377) which requires that notice of an election called for the purpose of determining whether bonds shall be issued by a county shall be published for a space of thirty days next preceding the day of the election.

3. When at the hearing of an application, under the provisions of the act of 1897 (Acts 1897, p. 82, Van Epps' Code Supp. §§ 6074-6081), to validate an issue of bonds, it appears that the notice of the election was published for a period of time less than thirty days next preceding the day of the election, a judgment should be entered declaring the election invalid and refusing to validate the bonds.

Argued October 20, — Decided October 30, 1902.

Validation of bonds. Before Judge Spence. Dougherty superior court. June 25, 1902.

*D. H. Pope & Son,* for plaintiffs in error.

*D. F. Crosland* and *W. E. Wooten, solicitor-general,* contra.

COBB, J.　An election was held in the County of Dougherty to determine whether bonds to the amount of $40,000 should be issued for the purpose of erecting a new courthouse.　The registration list for the election showed 611 qualified voters.　Persons to the number of 427 voted "For Bonds," and 81 voted "Against Bonds."　When the application to validate the issue of bonds came on to be heard, certain citizens of the county appeared and were made parties to the proceedings, and interposed numerous objections to the passage of an order validating the bonds.　One of the objections urged was that the notice of the election had not been published the requisite number of days before the election.　Upon the hearing it appeared that the order of the county commissioners calling the election was passed on May 5, 1902, that the first notice of the election was published in the newspaper in which the sher-

iff's advertisements were published, in an issue of the paper dated May 10, and that subsequent insertions of the notice appeared in issues of the paper dated May 17, 24, and 31. It was admitted that the papers were really issued one day before they bore date. The election was held June 5. It thus appears, from the uncontradicted evidence and the admission above referred to, that between the date of the paper in which the first insertion of the notice of the election was given and the date of the election there were only twenty-six days, and between the date of the actual issue of the paper and the date of the election there were only twenty-seven days. Having reached the conclusion that a failure to begin the publication of the notice at a time which would be thirty days from the date of the election invalidated the election, it is unnecessary to refer to the other objections which were raised at the hearing of the application to validate the bonds. The statute provides that the authorities calling such an election "shall give notice for the space of thirty days next preceding the day of election, in the newspaper in which the sheriff's advertisements for the county are published, notifying the qualified voters that on the day named an election will be held to determine the question whether bonds shall be issued by the county, municipality, or division." Pol. Code, § 377.

It is contended that, in determining what would be a compliance with the section of the code just quoted, reference must be had to the provisions of the act of 1891, now contained in the Civil Code, § 5458. That act provides that "in all cases where the law of force on October 21st, 1891, required citations, notices, or advertisements, by ordinaries, clerks, sheriffs, county bailiffs, administrators, executors, guardians, trustees or others, to be published in a newspaper for thirty days, . . it shall be sufficient and legal to publish the same once a week for four weeks (that is, one insertion each week for each of the four weeks) immediately preceding the term or day when the order is to be granted, or the sale is to take place; and the number of days between the date of the first publication, and the term or day when the order is to be granted or the sale to take place, whether more or less than thirty days, shall not in any manner invalidate or render irregular the said notice, citation, advertisement, or order or sale." Section 377 of the Political Code is a codification of the act of 1879, and therefore is a law which was of force at the date named in the act of 1891. While

the act of 1879 is a general law in the sense that it is not confined in its operations to a given locality, it is a special law in the sense that it applies only to a particular proceeding. In *Montford* v. *Allen*, 111 *Ga.* 18, it was held that the provisions of section 5458 of the Civil Code did not repeal the provisions of an existing municipal charter; it being there said that "a general law will not be so construed as to repeal an existing particular or special law, unless it is plainly manifest from the terms of the general law that such was the intention of the lawmaking body." It is true that in that case the particular or special law was also a local law, but we do not think this difference makes the principle of that decision any the less applicable in the present case. Even if the act of 1891 was in general terms sufficiently broad to embrace notices of elections to determine whether bonds should be issued by the authorities of municipalities and counties, it would not be construed so as to repeal the provisions of the act of 1879, unless there was something in the act of 1891 which made it plainly manifest that the General Assembly intended that it should have this effect. But we do not think the act of 1891 is, even in general terms, sufficiently broad to cover cases provided for in the act of 1879. The act of 1891 relates to citations, notices, and advertisements by certain public officers and certain representatives of estates; the enumeration of such officers and representatives being followed by the words " or others." Applying the doctrine of ejusdem generis in the construction of the words just quoted, the officers charged with levying taxes, contracting debts, etc., for counties and municipalities, are not of the same class as any of the officers enumerated in the act, and consequently would not be embraced within the general descriptive word " others." It is true that among the officers enumerated is the ordinary, and that in some counties the ordinary is the officer who has jurisdiction in county matters. But applying the rule of construction, noscitur a sociis, the ordinary referred to in this act is the officer who is the judge of the probate court, and not the ordinary who has charge of county affairs. In addition to this, the act of 1891 does not apply in any case except where a notice is to be given of a sale or of an order, which, from the class of officers enumerated and the use of the word " term," necessarily means an order passed by some court or judicial officer.

It is said, though, that even if the act of 1891 did not repeal or

modify the provisions of the act of 1879, the notice given in the present case was a substantial compliance with the act of 1879. In the case of *City of Dawson* v. *Dawson Waterworks Co.*, 106 *Ga.* 732, it was said: "The policy of the constitution is against the incurring of municipal debts, and therefore the constitutional provision prescribing the manner in which debts must be incurred is to be strictly construed. It has been the uniform ruling of this court that not only the constitutional provision must be strictly construed, but that the act of the General Assembly prescribing the manner in which an election shall be held on the question of bonded indebtedness shall be also strictly construed." See also the cases cited in the case just referred to. The act requires that notice of an election shall be published for the space of thirty days next preceding the day of the election, and the publication of a notice for a period of time less than thirty days is neither a literal nor a substantial compliance with this provision. It is said, though, that this construction of the law would altogether prevent at the present time an election from being held in the County of Dougherty, for the reason that the paper in which the sheriff's sales are advertised is issued on Friday, and that thirty days after any Friday would fall on Sunday. All that is necessary to be said in answer to this suggestion is that the rule that Sunday is dies non applies in such a case, and an election would be valid if held on the following Monday. While the act provides in terms that the notice shall be given for the space of thirty days next preceding the day of the election, construing that in connection with the provision that notice shall be given in the paper in which the sheriff's advertisements are published, the first insertion of the notice in a newspaper issued at least thirty days before the election and as nearly as may be immediately preceding the beginning of that period would be a compliance with the law. See, in this connection, *Montford* v. *Allen*, supra. In some cases it has been held that a failure to strictly comply with the law as to notice of an election may be treated as a mere irregularity, when there has been an acquiescence in the result of the election and a delay in raising the objection, and purchasers of bonds or others have been misled by the acquiescence and delay. See *Irvin* v. *Gregory*, 86 *Ga.* 605; *Brand* v. *Lawrenceville*, 104 *Ga.* 486. But in no case has it ever been held that an election of the character now under considera-

tion will be upheld when there has been a failure to comply with the law in regard to the notice, and objection is raised not only before the bonds have been issued, but before they could have been legally issued. The law requiring notice of the election to be given in a certain way is mandatory, and a failure to comply with the law vitiates the election, if objection is raised at the proper time and in the proper way. The constitution does not authorize the creation of a debt merely because two thirds of the qualified voters give their assent to the incurring of such debt. In order for a debt to be created under authority of this provision of the constitution, it is necessary that consent shall be given in the manner prescribed by law, that is, at an election held after notice has been published in a given way. See Civil Code, § 5893.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*