MILTON WEISS, H. C. COLLINS, JAMES HENDERSON, H. O. LAS-
SETER and R. P. TERRY as and constituting the Board of Public
Instruction of Dade County, under the laws of the State of Florida,
v. HERBERTA LEONARDY and JOSEPH KRUTTULIS individu-
ally and for and on behalf of the classroom teachers of Dade
County, Florida, similarly situated.

36 So. (2nd) 184                                              June Term, 1948
June 15, 1948                                                      En Banc

TERRELL, J.:

The appellees are teachers in the public schools of Dade
County. They brought this as a class suit under Section 87.01,
Florida Statutes 1941 to secure a declaratory decree adjudi-
cating their salary status, under Chapter 23726, Acts of 1947.
Two classes of teachers are involved in the controversy. (1)
Those in the service who were re-employed on or before the
commencement of the fiscal year July 1, 1947, and (2) those
employed after the beginning of the fiscal year, July 1, 1947.

As to the first class the chancellor held that complainants
were entitled to their salary in twelve equal installments for
the fiscal year, beginning July 1, 1947 and ending June 30,

1948. As to the second class the chancellor held that they were entitled to their salary in equal monthly installments from the date of employment to the end of the fiscal year. The Board of Public Instruction appealed.

As to the first class, the question may be stated as follows: Does the law require the Board of Public Instruction to pay them their salary in twelve equal installments at the end of each month during the fiscal year 1947-1948? As to the second class, the question may be stated as follows: Does the law require the Board of Public Instruction to pay them their salary in equal monthly installments from the date of employment to the end of the fiscal year, June 30, 1948?

The chancellor held that employment ran with the fiscal year as to the first class, but answered both questions in the affirmative. Appellants contend that the chancellor was in error because Sections 8, 9 and 10, Article XII of the Constitution require that all county and district school funds be used exclusively for school purposes and that the contracts in question propose to pay appellants in the first class their salary for July and August before any services are rendered. They say that payment for services not rendered amounts to the use of school funds for other than an exclusive school purpose.

We do not think there is any merit to this contention. It is true that the contract in question provides for an annual salary to be paid in twelve equal installments at the end of each month. The contract was made pursuant to Section 27, Chapter 23726, Acts of 1947, amending Section 236.02, Florida Statutes 1941, the pertinent part of which is as follows:

"provide written continuing contracts for all personnel entitled to such contracts as prescribed by law; provide each other member of the instructional staff, at least one month before schools begin, or before assuming his position if he is now employed until after that date, with a written contract providing for the payment of a definite salary as prescribed by law, require twelve calendar months of service for such principals and other special instructional personnel as prescribed by regulations of the State Board, and ten calendar months of service for all other members of the instructional staff, any such service on a twelve months basis to include

reasonable allowance for vacation or further study as prescribed by the county board in accordance with regulations of the State Board; and pay all instructional personnel whether employed on a ten or twelve months basis over a period of twelve calendar months except as otherwise authorized by the State Board."

Chapter 23726 revised many provisions of Chapter 236, Florida Statutes 1941, better known as the Florida School Code. Among other things, it provides that the school fiscal year shall begin on July 1st and close June 30th. It created the Foundation Program Fund to finance the public school program, made a large appropriation for its support and defined the requirements for each county to participate therein. Apportionments are made to the Foundation Program Fund on a twelve months basis and instructional personnel whether employed on a ten or twelve months basis are paid on the twelve months basis. The act by its terms was made effective July 1, 1947. This and other provisions relating to budgetary requirements, the emphasis on written contracts, the powers vested in the State Board of Education and the County Boards of Education and requirements as to professional training, amply support the holding of the chancellor.

In addition to the literal terms of Chapter 23726, it is not amiss to point out that one of its purposes was to effectuate the recommendation of the Florida Citizens Committee on Education. This committee was appointed by the Governor pursuant to Senate concurrent Resolution No. 3, approved at the 1945 session of the Legislature. The committee after a two year study of the educational system of Florida made a comprehensive report to the Governor, the Legislature and the people in which it recommended many improvements, those pertinent to this case having to do with teacher personnel, salaries, method of employment and compensation. Other recommendations made by the committee to raise the standard of the teaching staff, school system and school administration, were: (1) Minimum salary of $2400. annually for beginning teachers with four years of professional preparation, (2) compensation sufficient to attract and hold competent teachers and administrators. (3) Provision for a planned

system of school work and teachers competent to execute the plan. (4) Requirement that principals, guidance councellors, librarians and other special instructional personnel serve the year round; (5) Payment of teachers on a twelve months basis and serve at least one month when school is not in regular session for the purpose of planning and executing a satisfactory school program.

In addition to the foregoing the committee made other recommendations leading to professional improvements, but they are not pertinent to a decision of the question here. Chapter 23726 covers about fifty pages in the Act of 1947, and an examination of its provisions reveals repeated instances in which the legislature was attempting to enact the Committee's recommendations into law. So both the terms of the act and the circumstances leading up to its enactment support the chancellor's holding. Paying teachers on a twelve months basis is not a new experiment in this county. It has been tried and approved repeatedly. Dupay v. Board of Education of San Francisco, 106 Cal. App. 533, 289 Pac. 689.

There is nothing in our law against it and in view of the service time exacted of the teacher, including professional demands over and beyond school room duties, it is not amenable to the objection that it amounts to a disbursement of school funds for other than a strictly school purpose.

It may be admitted arguendo that some of the provisions of Chapter 23726 are not as clear as they might be, but when read in connection with the report of the Citizens Committee on Education and other factors that induced it, there is no reason for doubt that its overall purpose was to raise educational standards by removing deficiencies in the public school system, enlarging the educational program to comport with the present and future needs of the State, give it ample financial support and enlarge the economic status of the teaching staff by salary payment on a twelve month basis. We might, as was done by appellants, rationalize the naked contract to a different conclusion, but it would amount to nothing more than a treatise on semantics and a result foreign to the legislative intent.

After all, no school system can hope to rise above the character and quality of its teaching staff. That is its very life blood, the source from which its inspiration must arise, yet we have permitted it to languish and run down at the heels from economic anemia and failure of the wellsprings of moral and financial support. There is no better specific for economic anemia than a "shot" of filthy lucre. The legislature sensed the pathology and provided a perennial program in labor and pay for the teaching staff to remove the cause. In this it took the first step to accomplish the main objectives of Chapter 23726. It was a long stride in the direction of a "new freedom" for the teaching staff. She may now hope to acquire all the degrees the system requires, sleep between two sheets while she pursues them, thumb McCalls with assurance and have an apartment on the right side of the tracks with all the gadgets good taste will permit, but she is not to forget that the primary purpose of these accessories is not her comfort but to enlarge her capacity to supply the spiritual needs of the school children. One cannot read the report of the Citizen's Committee and not be impressed with the fact that Florida school children have subsisted too long on a low vitamin moral and spiritual diet and the purpose of Chapter 23726 was to provide the means to improve it. It is a challenge to parent and teacher for a better balanced intellectual, emotional and moral citizenry.

So much for the answer to question one. It is likewise a sufficient answer to question two. Chapter 23726 does not specify the time teachers in the second class employed after July 1, 1947, shall be paid, but, like the chancellor, we conclude that they should be paid in equal monthly installments from the date of their employment to the end of the fiscal year.

It follows that the judgment appealed from is affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN, ADAMS and HOBSON, JJ., concur.

SEBRING and BARNS, JJ., dissent.

BARNS, J., dissenting:

The effect of the Chancellor's final decree was to require the Board:

"(a) As to those teachers employed before the beginning of the fiscal year (July 1) to pay them forthwith 2-12ths of their annual salary, which would in effect pay them for the months of July and August when their work commenced September 1st (two months later).

"(b) As to those teachers employed after the beginning of the fiscal year, to pay them 'to the end that their entire annual salaries may be paid during the fiscal year.' (Before July 1)."

This of course would result in teachers employed at the same annual salary being paid in installments not identical. A teacher employed on June 30th would be paid differently from one employed July 2nd, even though their annual salaries be the same, for work to commence on September 1st and to continue for 10 months.

The contractual promises of the teacher to the local school board and the promises of the Board to the teacher appear to be on a form of contract approved by the *State Board of Education,* being Form 1-2 bt, and reading as follows:

"This CONTRACT, entered into between the Board of Public Instruction of Dade County, the party of the first part, and Herberta Leonardy, the party of the second part,

"WITNESSETH:

"1. That the party of the first part agrees to employ the party of the second part in the position of teacher, at Ponce de Leon School, for a period of 10 calendar months beginning September 1, 1947, and to pay the party of the second part an annual salary of $3600.00, in 12 equal installments, payable at the end of each calendar month of the period. . . .

"Given under our hands and seals this 6th day of June, 1947, at Miami, Florida."

Neither party complains of any ambiguity in language nor is there any controversy between the parties as to performance. Both seem to understand its terms, which have been specified with clarity.

No member of the bench or bar nor any of the parties have made any contention concerning the uncertainty of the terms of the language used in any particular.

The specific law of the school code applicable to the contracting parties, as quoted (in part) and relied upon by the Court as the guide for the controlling opinion, is:

Section 236.02, Florida Statutes, 1941, as amended:

"236.02.   Requirements for Participation in Foundation Program Fund.   Each county which participates in the Foundation Program Fund, as hereinafter prescribed, shall provide evidence of its effort to maintain an adequate school program throughout the county and shall meet at least the following requirements: . . .

" (3) Employment Policies for Instructional Personnel. . . . ten calendar months of service for all . . . members of the instructional staff . . . and pay all . . . instructional personnel . . . over a period of twelve calendar months *except* as otherwise authorized by the State Board. . . .

" (6) Salary Schedules.   Expend funds for instructional salaries in accordance with a salary schedule or schedules adopted by the county board in accordance with the provisions of law and regulations of the State Board.

" (7) Budgets.   Observe fully at all times all requirements of law relating to the preparation, adoption and execution of budgets for the county school system."—Sec. 27, Chapter 23726, Acts of 1947.

Sections 27 and 33 of Chapter 23726 (Secs. 236.02 and 236.09, F.S. 1941, as amended) relate to the means by which the county school system may participate in a subsidy by the State from the Foundation Program Fund and have no direct effect upon the contracts between the local Boards and the teachers which they employ.   Likewise the teacher, as such, in the payment of her compensation, must look to the terms of her contract and is not required to concern herself with the fiscal affairs of the County Board, and particularly as to the source of the revenue of the Board.   The affairs of the employer are not the affairs of the employee, except as covered by the terms of their contract.

Some statutory law governing the expenditure of school funds by the board is as follows:

"Each and every official and employee of the county board who is in any way responsible for collecting, depositing, budgeting, or expending school funds, or for purchasing materials or services for school usage, or is in any manner responsible for school funds, shall see that these funds are fully and properly safeguarded at all times; Proper safeguards are to be evidenced not only by accurate and complete accounting, observance of all legal requirements, preparation of all required reports, but also by exercising every diligence to see *that value has been* received for any funds which are expended." (Emphasis supplied).—Sec. 237.29, F.S. 1941, F.S.A.

" . . . The county superintendent shall recommend payment from school funds only after he has exercised due diligence in assuring himself that such payments are lawful, *are provided for in the budget,* are reasonable, and are for goods received in good order *or for services properly rendered* and for which payment has not been made."—Par. (6) of Sec. 237.02, F.S., 1941, F.S.A.

Mrs. Leonardy's contract recites that she was employed by said Board "for a period of 10 calendar months beginning September 1, 1947," and that said Board agreed to pay her for said services "an annual salary of $3600. in 12 equal installments, payable at the end of each calendar month of the period."

These contracts do not authorize or require Mrs. Leonardy or any of the other teachers to perform any services during July and August, 1947. These contracts recite that the teachers' service shall commence on September 1, 1947, and end on June 30, 1948.

Plaintiffs' bill of complaint did not allege that Mrs. Leonardy, or any of these teachers, performed any services for said Board in July or August, 1947. Defendants' answer averred that neither Mrs. Leonardy, nor any of these teachers, performed any services for said Board in July or August, 1947.

These contracts say nothing about *payment in advance* for services *to be rendered in the future.* These contracts recite

that the annual salaries are payable "in 12 equal installments, payable at the end of each calendar month of the period" commencing September 1, 1947.

It appears that if said Board is required by this Court in this cause to pay to said teachers alleged wages or salaries for the months of July and August, 1947, at a monthly rate of 1/12th of their respective existing annual wages or salaries, said Board will be required to pay out approximately $1,-000,000.00 *in advance* of the time provided for by the present contracts between said teachers and said Board, and that is not authorized by said official budget; that such *advance* payment to said teachers of said sum of approximately $1,000,-000.00 has never been authorized or approved by the Budget Commission of Dade County, Florida, and that, if defendants are required by an order of the court in this cause to so pay said sum of approximately $1,000,000.00 to said teachers, for the months of July and August, 1947, that it would be contrary to the provisions of sub-paragraphs (6) and (7) of Sec. 236.02, as amended, and Sec. 237.29 of F.S., 1941; that one hundred and fifteen teachers in the public schools of Dade County, who, between June 1, 1947, and January 13, 1948, entered into contracts with said Board to teach in said schools for a period of 10 months commencing on September 1, 1947, and whose annual salaries under said contract totalled $338,-345.00, resigned or died prior to February 11, 1948 (the date of the Board's answer).

It is clear that if the Board on its own behalf should propose and pursue a policy, as now sought to be judicially coerced, of making payments of the public's money for services to be rendered in the future, the members thereof would subject themselves to an injunction suit and indictment for misappropriation of public funds and also to removal from office by the Governor.

It appears that the teacher is not so much wanting to be paid for two months services before she commences work as she is desirous of being paid promptly when she has completed her services.

The contract between the teacher and the Board is as authorized by the State Board of Education. The State Board

of Education is authorized to approve a form whereby the teacher for ten months' services will be paid her annual salary in 10 equal installments. See Sec. 236.02 (3) F.S., 1941 (supra). The law directs payments in (12) installments, as provided by Mrs. Leonardy's contract "except as otherwise authorized by the State Board." It is likely that if the teachers prefer that payments not be deferred that the State Board will authorize or permit payments to be made without deferment.

I think the contract should be allowed to stand as written.