123 So.2d 313 (1960)
J. Turner BUTLER and William A. Hallowes, as Trustees of the property of Florida East Coast Railway Company, Petitioners,
v.
Jerry W. CARTER, Wilbur C. King and Edwin L. Mason, as and constituting the Florida Railroad and Public Utilities Commission, Respondents.
Supreme Court of Florida.
September 21, 1960.
Rehearing Denied October 17, 1960.
Harold B. Wahl and L. Page Haddock, Jacksonville, for petitioners.
Lewis W. Petteway and James L. Graham, Jr., Tallahassee, for respondents.
Fred M. Conway, Ormond Beach, and Frederick B. Karl, Daytona Beach, for protestants.
HOBSON, Justice.
The petitioners seek to reverse an order of the Florida Railroad and Public Utilities Commission which denied the application of the Florida East Coast Railway Company and the Railway Express Agency, Inc. to discontinue their agencies at Ormond Beach, Florida.
The facts of the case are as follows: On October 29, 1958 the petitioners filed their application for authority to discontinue their agencies at Ormond Beach, *314 Florida and to handle the business through the Daytona Beach Agency five and one-half miles away. Public hearings on said application were held before an Examiner appointed by the Commission on March 25, 1959 and April 7, 1959.
The Examiner filed his proposed order with the Commission in which he recommended that the applicants be granted permission to discontinue their agencies. Said order reads in part:
"The Ormond Beach Agency maintains only one employee who acts in the dual capacity of agent for both applicants. Only local passenger tickets are sold at the Ormond Beach agency. Train conductors will continue to sell local tickets to passengers boarding trains at Ormond. There will be no change in passenger train service should the agency be closed.
"The Daytona Beach agency of both applicants is more than able to handle the business of the Ormond Beach agency. Discontinuance of the Ormond Beach agencies will not affect LCL[1] shipments except that non-deliverable freight and express will be offered for delivery at the Daytona Beach agency instead of at the Ormond Beach agencies. Local telephone service exists between Ormond Beach and Daytona Beach. Paper work of carload freight will be handled at the Daytona Beach agency, but cars will be spotted in the Ormond Beach area for delivery.
"The elimination of the Ormond Beach agencies will result in efficiency and economy for the applicants without appreciable inconvenience to the public. The continuance of the agencies at Ormond Beach is not necessary in the public interest and under the evidence presented would impose an unnecessary and undue burden on the applicants."
The full Commission agreed with the Examiner that the passenger service at Ormond Beach was practically non-existent and that carload lot shipments to and from Ormond Beach would continue to be handled in much the same manner, except that the paper work involved would be carried on at the Daytona Beach station. However, the full Commission went on to say:
"It is evident that there is here involved a situation in which the applicants have attempted to show that they can effect a savings or avoid an economic waste by closing this station and absorbing its functions in their agencies at Daytona Beach. The extent of such savings was not proved conclusively, but there is no dispute about the fact that the Ormand Beach Agency operation is a profitable one.[2] The applicants are not requesting the closing of an agency operated at a loss, but are trying to accomplish a savings by centralizing their operations. The only direct savings accruing to the Florida East Coast Railway was claimed to be at least $7,500 annually which is a relatively insignificant amount when it is considered that the potential gross revenue of the agency is in excess of one quarter of a million dollars annually. The issue of whether the applicants should be authorized to discontinue this service will depend upon a determination of whether the savings which might accrue to the applicants is outweighed by the benefit and convenience, if any, that might be derived by the public from the continuance of the agency." (Emphasis supplied.)
Finally the Commission found that public convenience and necessity would better be *315 served by the continuance of the agency at Ormond Beach "even though some savings might thereby be realized by the applicants".
Commissioner Boyd dissented on the ground that the Railroad's petition for discontinuance met the standards set by the NARUC formula applicable to cases involving discontinuance of railroad station agencies and that since the Commission had previously adopted said formula for use in Florida the application should have been granted.
By its brief the petitioners assert that they have conclusively established a right to the discontinuance. In support of this allegation the petitioners point to the following items which they consider significant: (1) The Commission's admission that the passenger business from this agency was "practically non-existent", (2) the fact that none of the "principal" shippers in the area testified in opposition to the discontinuance, (3) the proximity of the Daytona Beach station and its accessibility by local telephone, (4) their contention that in agency discontinuance cases carload lot freight should not be considered because an agent is not needed to service this type of freight, (5) the fact that the economies herein sought are especially important to the railroad which has been in receivership since 1931 and which suffered a loss of over four million dollars in 1959, (6) that Commissioner Boyd's dissent points out the application for discontinuance would have been granted if the Commission had followed the applicable NARUC formula, and (7) their claim that the Commission gave too great a weight to the testimony of residents of the area whose principal ground for protesting was civic pride.
Epitomizing, the petitioners contended that the closing of the Ormond Beach agency would permit conservation of expenses without any inconvenience to the using public.
Our research discloses a scarcity of Florida cases which have considered the problem of the criteria applicable to applications for discontinuance of agency stations.[3] Nevertheless, there is respectable authority from other jurisdictions to the effect that it is unreasonable to require the maintenance of an agency station where the cost of the service is out of proportion to the revenue derived from the portion of the public benefited thereby, particularly where a substitute service is available. Among the factors normally considered in determining the question are the volume of business done at the station, its proximity to other stations, the accessibility of the latter, the cost of furnishing such service,[4] the business growth potential of the community under consideration[5] and the financial condition of the railroad as a whole.[6]
It is significant to note that in many states the courts place heavy emphasis on the fact that the principal need of an agent is occasioned by the less than carload business, thus these courts, in agency discontinuance cases, do not consider carload lot freight as a factor in determining whether the presence of an agent is required.[7]
In 74 C.J.S. Railroads § 402 c. (2) the rule is stated thusly,
"Whether or not a railroad may properly be entitled to change a station from an agency to a nonagency or prepay station generally depends on the facts of the particular case. The test generally applied in determining *316 the matter, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency, that is, whether the economic waste caused by the operation of the agency outweighs the benefits and conveniences to the public."
However, in our consideration of the instant petition, it must be remembered that every order of the Commission is by statute clothed with a presumption that it is prima facie reasonable and just. § 350.12(2) (m), F.S.A. On review this presumption of validity can only be overcome when either the invalidity of the Commission's decision appears plainly on the face of the order or where such weakness is made to appear by clear and satisfactory evidence.
On review by certiorari this court will not undertake to re-weigh or re-evaluate the evidence presented to the administrative body whose order is under examination. Further if there is competent substantial evidence to sustain the findings and conclusions of the Commission, and no rule of law was violated in the proceedings, and the whole record does not disclose an abuse of authority or arbitrary action, the findings and conclusions of the Commission will not be set aside on certiorari, even though the reviewing court might have reached different conclusions on the evidence.[8]
Although we are fully aware of these mandates, we caution the Commission that they do not imply anything in the way of infallibility[9] and that upon occasion the cloak of presumptive validity has a tendency to wear thin if it is used as a means of interfering with management's efforts to reduce expenses under circumstances wherein the inconvenience to the shipping public would be slight.
Although we might have reached a different conclusion on the evidence than that reached by a majority of the Commissioners we are of the opinion that its orders herein are adequately supported by competent substantial evidence and that the petitioners have failed, with any degree of clarity, to prove the invalidity of the same.
The petition for writ of certiorari is hereby denied.
It is so ordered.
THOMAS, C.J., and THORNAL and DREW, JJ., concur.
TERRELL, J., dissents.
NOTES
[1] Less than carload lots.
[2] The Record discloses that the gross business of the Ormond Beach station in 1958 was approximately $250,000 which produced a net revenue of about $72,000. The Railroad claims the closing of agency would result in about $10,000 saving to it.
[3] See Atlantic Coast Line R. Co. v. King, Fla. 1951, 51 So.2d 723.
[4] Atchinson, T. & S.F. Ry. Co. v. Illinois Commerce Commission, 1947, 397 Ill. 406, 74 N.E.2d 885.
[5] State v. Seaboard Air Line Railway Co., 1927, 92 Fla. 1139, 111 So. 281, 735.
[6] Texas & N.O.R. Co. v. Louisiana Public Service Commission, 1958, 235 La. 973, 106 So.2d 438.
[7] See In the Matter of the Application of Union Pacific R. Co., etc., 1943, 64 Idaho 529, 134 P.2d 599 and cases cited therein.
[8] For a complete statement of the scope of review in this type of case see Florida Rate Conference v. Florida Railroad and Public Utilities Commission, Fla. 1959, 108 So.2d 601.
[9] Atlantic Coast Line Railroad Co. v. United States Sugar Corporation, Fla. 1952, 59 So.2d 852.