STURGIS, Judge.
The appellant, a resident and taxpayer in an area proposed to be incorporated as the Town of St. Marks, Florida, pursuant to Chapter 61-2764, Laws of Florida, Acts of 1961, petitioned the Circuit Court of Wakul-la County for a writ of quo warranto, challenging the validity of a referendum election called under the Act and the authority of the appellees to exercise power as municipal officials who undertook to act as such on the assumption that the Town had been incorporated according to law. A rule nisi issued to the respondent-appellees who by their return generally denied the material allegations of the petition. Testimony was presented and thereupon the trial court entered an order discharging the rule and dismissing the petition, hence this appeal.
The material facts are not in'dispute. The enabling Act provides the procedure for incorporating the Town of St. Marks and defines its government and powers. The following provisions are pertinent to this review:
“Section 144. This act shall become effective only upon its approval by a majority of the electors voting a referendum election to be held in the town of St. Marks on the 17th day of June, A.D. 1961.
“The County Commissioners for Wakulla County shall conduct the election and shall advertise the same in a newspaper of general circulation in said county for once each week for four consecutive weeks before said election.
* * *
“No person shall be allowed to vote at said election who is not a qualified voter under the state law, and who has not resided in the town of St. Marks, as described herein, for six (6) months preceding June 17, 1961, and who has not registered as a voter of said town in the manner provided herein. * * *
“The Supervisor of Registration of Wakulla County shall open books for registration for said election at the post office building, St. Marks, Florida, from ten o’clock A.M. until twelve A.M. on the 20th and 27th of May, 1961, and the 3rd and 10th of June 1961. The book shall be closed at twelve A.M. on June 10, 1961.”
******
“In the event such election is not held as authorized and provided this act is void. ^ ^ ^ ”
At an election held on the date specified, a majority of those voting favored incorporation of the Town. The sole question for determination on this appeal is whether the election was conducted in substantial compliance with the law.
The proofs reflect the hereinafter discussed deviations from the procedure provided by the Act for holding the election.
Appellant contends that since the Act did not become a law until May 22,1961, the provision that the registration books bé kept open at St. Marks for registration on May 20, 1961, was impossible of performance; that “substantial compliance” could not be made under such circumstances, thus rendering the election void. Standing alone, this factor would not operate to invalidate an election otherwise held in compliance with the Act. It must be presumed that the members of the legislature sponsoring this special Act were aware that it might not become a law until after May 20, 1961. In permitting it to pass as framed, the conclusion is inescapable that the legislature treated the May 20, 1961, provision as being separable from the remaining provisions of the Act. The dates for registration at St. Marks were substantially complied with by holding the books open there for registration during the hours and on the other dates specified by the Act.
Due to postal regulations, the Supervisor of Registration was not permitted to use the post office building at St. Marks, Florida, which was specified by the Act as *146 the place for registration, and so used a shed directly across the street from the post office for that purpose. Appellant contends that this was a material deviation, rendering the election invalid, but we disagree. We take notice of the fact that St. Marks is a small community and are satisfied, as was the trial court, that this change did not operate to prejudice or deny any interested person the opportunity to vote. While the legal effect of this type of deviation necessarily depends on the facts peculiar to each case, we hold that use of the substitute place of registration under the facts in the case on review constituted substantial compliance with the Act.
In sustaining the validity of the election, the court below adopted the view that the provisions for registration and advertising the election are directory rather than strictly mandatory, in support thereof citing 62 C.J.S. Municipal Corporations § 21, p. 99, 29 C.J.S. Elections § 55, p. 73 et seq., and Special Tax School District No. 1 of Duval County v. State (Fla.), 123 So.2d 316. On that predicate it was held that publication of a notice of the election in three separate issues of a weekly newspaper of general circulation in Wakulla County constituted substantial though not full compliance with the requirements of the Act which required such notice to be given “once a week for four consecutive weeks before said elections.”
As against appellant’s contention that nothing less than four publications will suffice, appellees insist that three publications constitute substantial compliance; and both cite the Duval County case, supra, in support of their position.
In the Duval County case the County Commissioners, acting pursuant to Section 97.081(2) (b), Florida Statutes, had called for a reregistration of freeholders. The Act required that notice stating the purpose and use of such reregistration be published once each week for four consecutive weeks and that the books be kept open for the purpose of reregistration for at least thirty days and be closed at least fourteen days prior to the holding of the election. The Florida Supreme Court, speaking through Mr. Justice Drew, held the election void because of failure to publish the notice for the full four weeks and because the registration books were not kept open for thirty clear days, exclusive of Sundays, prior to the election, and because the registration books were not closed at least fourteen clear days, exclusive of Sundays, prior to the election, saying:
“Special elections, and particularly those which might result in requiring the exercise of the power of taxation, must be conducted in substantial compliance with constitutional and statutory requirements. * * * The power to prescribe what shall constitute reasonable notice of an election, reregistration or other procedures is a legislative one. When it does so in elections of this kind, the requirements must be susbtantially complied with. One publication of the notice cannot conceivably be construed to be a substantial compliance with a statute which requires such notice to be published once each week for four consecutive weeks. Such requirement, being a condition precedent to an effective election, clearly supports the conclusion of the trial judge that this fatality vitiated the entire election.”
Appellant insists, and we agree, that the over-all import of that decision, as applied to the case on review, is to require four weekly publications of the notice and that anything less than that number will not constitute substantial compliance. Appellees’ contention that the Supreme Court, in saying that “one publication of the notice cannot conceivably be construed to be a substantial compliance with a statute which requires such notice to be published once each week for four consecutive weeks,” impliedly held that three publications constitutes substantial compliance, is untenable because (1) the Supreme Court was not confronted with a three-publication situation as we are, and (2) we construe the term “substantial compliance,” as used in the quotation, as having *147 reference to situations other than one where it is sought to have “three” amount substantially to “four”. Even legal parlance will not permit that arithmetic mutation.
In Eberhardt Const. Co. v. Board of Com’rs of Sedgwick County, 100 Kan. 394, 164 P. 281, the Kansas Supreme Court in dealing with a similar problem under a Kansas statute said:
“The statute requires that a notice of an election to vote upon the question of issuing bonds to cover the cost of a county building shall be published in the official paper ‘for not less than thirty days preceding the day such special election is to be held.’ * * * Here the election was held on August 1, 1916. The notice was published in the official paper (a weekly) in the issues of June 30th, July 7th, July 14th, and July 21st, but not in the issue of July 28th. The language of the statute requiring a publication to be made in a paper ‘for’ a given number of days before an event is held to mean that the publication must run during the entire period, be continuous from a time that far in advance until the date named, and therefore, although the first publication is made sufficiently early, the omission of the notice in the last issue of the paper before the event is to take place results in a failure to meet the legal requirement. * * *
% 3ft £
“The failure to publish the notice of a special election for the full time required by law is a fatal defect rendering the election void and presenting the lawful issuance of bonds which depend upon it for their validity. State ex rel. v. Staley1, 90 Kan. 624, 135 P. 602
“Formal defects in a published notice of an election which do not diminish its efficiency in giving information by which the action of voters may be affected are not necessarily fatal. * * But, as was pointed out in State ex rel. v. Staley, just cited, the omission' of the notice from one issue of the paper in which the law required it to be inserted might possibly have deprived some voters of an opportunity to take part in the election, and thereby have influenced the result.”
To the same effect see City of Miami v. Romfh, 66 Fla. 280, 63 So. 440; Davis v. Dougherty County, 116 Ga. 491, 42 S.E. 764; Shanks v. Winkler, 210 Ala. 101, 97 So. 142; State v. Hoyle, 211 Miss. 342, 51 So.2d 730; City of Chanute v. Davis, 85 Kan. 188, 116 P. 367.
The situation here is clearly distinguishable from that where the time for election is prescribed by general law and an officer is charged with the duty of giving notice of such election. In that posture the law in itself is notice which all electors must heed, and it is generally held that failure to give notice will not invalidate the election because the provision for notice is primarily a reminder to electors of what the law has already provided and is therefore directory only and not mandatory. That rule also rests on the premise that the notice under such circumstances is unconnected with the electors’ right of franchise. However, where the time for holding an election is not prescribed by general law or the constitution, and is fixed by a body vested with authority to call it (in the case at bar, the legislature), the voters cannot be expected to have or take notice thereof unless notice is given. Accordingly, a requirement for publication as here involved must be considered as mandatory and its performance essential to the validity of the election. The requirement under the statute in suit as to the length of time during which a notice must be given is quite as substantial as the requirement that notice must be given at all.
Having a fair conception of the population potential of the community known as St. Marks, we are not unmindful of the likelihood that the election result would not have been changed had the mandatory provision for publication of notice been complied *148 with; and we may surmise that every person in the affected area who might have qualified to vote either did so or was acquainted with the need to register and was otherwise informed of the purpose of the election. But in so doing we would necessarily indulge in pure speculation for the legal proofs herein — the testimony presented before the trial court — do not support that premise. An election by which a municipal corporation may be created and invested with many specific and implied powers, including the power to tax, as here involved, is equally if not more important and a matter of concern to the citizen affected thereby as is an election upon the question of issuance of bonds the payment of which is to be made by levy of taxes and secured by a lien upon property of the citizen. Under our form of government the rights of the minority, even of one, are entitled to full protection under the law.
For the reasons stated, the order appealed must be and it is
Reversed.
CARROLL, DONALD K., C. J., and WIGGINTON, J., concur.