342 So.2d 56 (1976)
COUNTY OF PALM BEACH, Florida, Appellant,
v.
STATE of Florida et al., Appellees.
No. 48569.
Supreme Court of Florida.
November 30, 1976.
As Corrected On Denial of Rehearing February 10, 1977.
*57 Arnold L. Greenfield, Gen. Counsel, State Division of Bond Finance, Tallahassee and R. William Rutter, Jr., County Atty., for appellant.
Robert L. Shevin, Atty. Gen.; and Basil S. Diamond and Mary Jo Carpenter, Asst. Attys. Gen., for appellees.
Chester Bedell and John A. DeVault, III of Bedell, Bedell, Dittmar & Zehmer, Jacksonville, for intervenors-appellees.
ENGLAND, Justice.
This case is an appeal from a judgment of the Palm Beach County Circuit Court declaring invalid a $50 million bond issue approved by the voters of Palm Beach County. We have jurisdiction pursuant to Article V, Section 3(b)(2) of the Florida Constitution.
The trial judge below construed the resolution by which the Palm Beach County Commission proposed the bond issue as authorizing the use of the proceeds for the unconstitutional purpose of maintaining beaches and parks, and declared the issue invalid for that reason. He also found that Chapter 75-471, Laws of Florida, could not cure the complete failure of the county to publish notice of the bond election in the manner required by Section 100.211, Florida Statutes (1973), because this curative legislation also authorized the use of the bond proceeds for the maintenance of beaches and parks. We reverse.
There is no question but that the manner in which the officials of Palm Beach County conducted the election proceedings surrounding this bond issue was deplorable. Infirmity after infirmity crept into the bonding process, and ill-considered and equally careless attempts were made to cure the defects. Nonetheless, the present posture of the matter is that we are obliged to accept or reject that which the voters of the county overwhelmingly approved. Based on the law presently in existence in this state, we can fulfill the voters' expectations by validating the bonds, with a limiting construction placed on the use of the word "maintenance".
Article VII, Section 12 of the Florida Constitution, limits the power of *58 counties to issue bonds to the two purposes of financing or refinancing capital projects, and to refund outstanding bonds at a lower interest cost. Bonds cannot be issued for the purpose of non-capital expenditures, such as payment of daily maintenance expenses. In this case, the County Commission passed a resolution which stated in relevant part that the bond proceeds would be used to finance "the cost of the acquisition, maintenance and preservation of beaches, parks, bicycle trails, parking facilities, access strips and facilities appertenant (sic) thereto... ." If it were clear that references to "maintenance" were intended to mean constitutionally prohibited non-capital expenditures, we would have no choice but to affirm the judgment of the trial court. It is far from clear, however. County Commissioners are presumed to have acted in accordance with their duty to uphold the Constitution of this state,[1] and this Court is bound to avoid constitutional questions concerning a statute by severing objectionable phraseology where necessary.[2] In the context of the resolution the term "maintenance" is not so clear and unambiguous that all would agree it means operating as opposed to capital expenses. It reasonably can be read to mean "capital maintenance", such as replacing fallen trees or eroded beaches. When such ambiguity exists, intent is the touchstone.[3] Before us, the Commission has avowed its intention to use the bond proceeds only for constitutionally proper capital projects, and after the election it adopted a resolution validating the election which omitted the word "maintenance". We accept the averments of the Commission, cognizant of the fact that if any attempt is made to use bond proceeds in an improper manner an action for injunctive relief would lie.[4]
As regards the failure to comply with the notice requirements of Section 100.211, this Court has very clearly stated that after-the-fact validating legislation is perfectly proper to cure procedural defects.[5] In this case the Legislature in Chapter 75-471[6] declared the election valid because notice had been given through the mailing of a sample ballot to all registered voters in the county. While such substituted notice would not constitute substantial compliance with Section 100.211, the facts of this case present no grounds for the overruling of established precedent. Our construction of the term "maintenance" as used by the Commission is also applicable to the use of that word by the Legislature. We therefore find that the failure to give statutory notice was cured by subsequent legislative validation.
For the reasons stated, the judgment of the Palm Beach County Circuit Court is reversed and this case is remanded for further proceedings not inconsistent with this decision.
It is so ordered.
*59 OVERTON, C.J., and ADKINS, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., dissents with an opinion with which ROBERTS, J., concurs.
BOYD, Justice (dissenting).
I cannot agree with the majority that validity was breathed into the bond issue by Chapter 75-471, Laws of Florida.
Article VII, Section 12 of the Florida Constitution does not include maintenance within the purposes to which it limits local bonds. County Commission Resolution 74-783, which called for the bond issue, states that the funds from sale of bonds shall be used "for the purpose of financing the cost of the acquisition, maintenance and preservation of beaches, parks, bicycle trails, parking facilities, access strips and facilities appertenant [sic] thereto for the residents of Palm Beach County." Minutes of the meeting indicate the Commission, in adopting the above resolution, intended that portions of the money be used for maintenance purposes. The question presented to the voters did not state directly that the proceeds from bond sales would be used for maintenance, but stated the bonds would be issued pursuant to the resolution. Reference to the resolution constituted an indirect inclusion in the question before the voters of maintenance as an expenditure of the bond proceeds. The Legislature, in the enactment of the special curative statute, Chapter 75-471, referred to the bonds as providing funds for financing the costs of acquisition and maintenance of beaches and parks.
It is clear to me that the voters must have thought proceeds from the bonds would be used for the unconstitutional purpose of maintenance and that the Legislature's attempt to breathe validity into the bond issue was likewise unconstitutional.
Aside from the constitutional problems, other errors were committed in the bond process. Resolution 74-783 directed that the clerk should publish notice of the bond election to be held on November 5, 1974, once each week for four consecutive weeks, the first publication to be not less than thirty days prior to the date of the election as required by Section 100.211, Florida Statutes (1973). No such notice was ever published.
The learned circuit judge found that county officials and the news media at all levels informed the residents of the County of the coming bond election, including the mailing of one sample ballot to each home having one or more registered voters. Nevertheless, the court found that complete failure of statutory notice constituted a fatal and incurable defect in the bond issue rendering it invalid.
The trial court relied heavily upon 1st Tax Dist. No. 1 of Duval County v. State, Florida, et al., 123 So.2d 315 (Fla. 1960), where only one publication of notice of a bond election was made. This Court held the bond issue invalid because of failure to comply with the statutory requirement of four weekly notices. The trial court's decision is buttressed by State ex rel. Pope v. Shields, 140 So.2d 144 (Fla. 1st DCA 1962), where the Court held that publication of notice of a town incorporation election in three issues of a weekly newspaper did not constitute substantial compliance with a Special Act of the Legislature which provided for the election procedure and called for notice to be published once a week in a local newspaper for four consecutive weeks.
Appellant relies upon State v. County of Sarasota, 155 So.2d 543 (Fla. 1963), where this Court held a bond issue valid based upon substantial compliance with the same statutory notice requirements at issue here.
"The publication in question was first made thirty-five days before the election and was made once each week for five weeks before the election, the first two weeks of the period of publication and the last three weeks. In fact, in the last three weeks, publication was made every day for fifteen days. However, on account of a cause which the publisher has not been able to determine, one publication of the formal notice was not made during the week of March 4." at 545.
That case is not at all similar to this case. Here statutory notice was not published *60 once. Instead the election was publicized by public officials and the news media. To permit statutory notice to be substituted by other types of notice gives rise to an impossible task as to what forms and degrees will be sufficient to constitute substantial compliance. Most informed citizens expect legal notices to appear as items so designated in newspapers of general circulation. Thus, as the majority recognizes, the efforts of the County officials did not constitute substantial compliance with statutory requirements.
The entire bonding process was riddled with errors. Approval of this bond issue lowers the standards for the issuance of bonds to such an extent that from now on it will be difficult to disapprove bond issues regardless of how defective and regardless of obvious constitutional violations.
I dissent from the opinion of the majority and I would affirm the order of dismissal by the Circuit Court.
ROBERTS, J., concurs.
NOTES
[1] Cf. City of Miami v. Kayfetz, 92 So.2d 798 (Fla. 1957).
[2] State v. Calhoun County, 126 Fla. 376, 170 So. 883 (1936).
[3] Weiss v. Leonardy, 160 Fla. 570, 36 So.2d 184 (1948).
[4] Williams v. Town of Dunnellon, 125 Fla. 114, 169 So. 631 (1936).
[5] Coon v. Board of Public Instruction, 203 So.2d 497 (Fla. 1967) (curative legislation abrogating a prior legislative mandate setting the percentage of freeholders required to petition for an election); State v. County of Sarasota, 155 So.2d 543 (Fla. 1963) (curative legislation directed at defects in statutory publication of notice requirements).
[6] Chapter 75-471 provides:

"All acts and proceedings in connection with the election held in Palm Beach County on November 5, 1974, including the failure to publish notice of such election as required by s. 100.211, Florida Statutes, since notice of such election was in fact given by the mailing of sample ballots to all registered voters, to authorize the issuance of bonds of Palm Beach County, for the purpose of providing funds for financing the costs of acquisition and maintenance of beaches and parks are hereby ratified, validated, and confirmed and said election is declared to be legal and valid in all respects."