# Supreme Court of Florida

_____

No. SC14-1282
_____

**VICKI THOMAS, et al.**,
Appellants,

vs.

**CLEAN ENERGY COASTAL CORRIDOR, etc., et al.**,
Appellees.

[October 1, 2015]

POLSTON, J.

This case is before the Court on appeal from a circuit court judgment validating a proposed bond issue by Clean Energy Coastal Corridor (Clean Energy).[1] We affirm the circuit court's decision to validate the bonds, but remand for the circuit court to require Clean Energy to amend the financing agreement as described herein.

_____

1. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const.

# BACKGROUND

Clean Energy was created pursuant to section 163.01(7), Florida Statutes, by interlocal agreement between three municipalities located in Miami-Dade County, Florida.[2] Clean Energy is a separate legal entity from the municipalities that created it, and its purpose is to finance through the issuance of bonds certain qualifying improvements to real property authorized by section 163.08, Florida Statutes, commonly referred to as the Property Assessed Clean Energy (PACE) Act.

Participation in Clean Energy's PACE Program by property owners within the area covered by the interlocal agreement is voluntary, and in exchange for receiving financing for qualifying improvements, including those related to renewable energy, energy efficiency and conservation, and wind resistance, property owners agree to the imposition of non-ad valorem assessments on the benefitted property. The PACE Act requires these non-ad valorem assessments to be collected on the tax bill pursuant to the uniform method of collection authorized by section 197.3632, Florida Statutes. See § 163.08(4), Fla. Stat.

After Clean Energy's creation, its governing board adopted a bond resolution authorizing the issuance of revenue bonds in an amount not to exceed

---

2. The three municipalities are the Town of Bay Harbor Islands, the Village of Biscayne Park, and the Town of Surfside.

$500,000,000 for the purpose of financing qualifying improvements. Clean Energy then filed a complaint to validate those bonds and the non-ad valorem assessments securing them in the Circuit Court for Leon County, Florida, as specified in section 163.01(7)(d), Florida Statutes. The circuit court issued an order to show cause why the bonds should not be validated, and Clean Energy published the order as required by law. See § 75.06, Fla. Stat.

When it filed its complaint, Clean Energy contemplated that local governments in both Miami-Dade and Broward Counties would join in the interlocal agreement and participate in Clean Energy's PACE Program. Accordingly, Clean Energy named the property owners, taxpayers, and citizens of both Miami-Dade and Broward Counties among the defendants. However, when Broward County did not adopt a resolution joining in the interlocal agreement, Clean Energy filed a notice of voluntary dismissal dropping the property owners, taxpayers, and citizens of Broward County from the case. In light of the voluntary dismissal, Clean Energy argued that two residents of Broward County (Sidney Karabel and Christopher Trapani) who had appeared in the case and responded to the order to show cause, lacked standing and moved to strike their response.

At both the initial and continued show-cause hearing, counsel for the Broward County residents, who also represents the only other property owner who appeared in the proceeding (Miami-Dade County resident Vicki Thomas), was

given the opportunity to present his clients' arguments as to why the bonds should not be validated. Counsel acknowledged that Clean Energy would eventually be able to validate its bonds, but raised several arguments regarding alleged errors that Clean Energy had made in developing its bond documents and argued those errors prevented the court from ruling that Clean Energy had the present authority to issue the bonds.

The only argument regarding Clean Energy's authority to issue the bonds raised below that is repeated in this appeal is that the bonds cannot be validated because the financing agreement to be signed by Clean Energy and property owners participating in the PACE Program purports to authorize a remedy for the collection of unpaid assessments that is not authorized by Florida law, namely judicial foreclosure. Section 4 of the financing agreement provides:

> Section 4. Collection of Assessment; Lien
>
> The Assessment, and the interest and charges thereon resulting from a delinquency in the payment of any installment of the Assessment, shall constitute a lien against the Property equal in dignity with county taxes and assessments, and when due shall be superior to all other liens, title and claims, including any mortgage, until paid. The Assessment shall be paid and collected on the same bill as real property taxes using the uniform method of collection authorized by Chapter 197, Florida Statutes. The Property Owner agrees and acknowledges that if any Assessment installment is not paid when due, the Authority [(Clean Energy)] shall have the right to seek all appropriate legal remedies to enforce payment and collect the Assessment or amounts due hereunder, including but not limited to foreclosure, and seek recovery of all costs, fees and expenses (including reasonable attorneys' fees and costs and title search

expenses) in connection with the enforcement and foreclosure actions. The Property Owner acknowledges that, if bonds are sold or if the Authority enters into another financing relationship to finance the Final Improvements or an Abandonment Payment, the Authority may obligate itself, through a covenant with the owners of the bonds or the lender under such other financing relationship, to exercise its foreclosure rights with respect to delinquent Assessment installments under specified circumstances.[3]

In addressing this argument, the circuit court stated that it read section 4 of the financing agreement to mean that "the collection [of assessments] has to be in accordance with Chapter 197, and that foreclosure can only be sought if it's an appropriate legal remedy." Clean Energy conceded that judicial foreclosure is not currently an appropriate legal remedy and that it is limited to collecting assessments in accordance with chapter 197's uniform method. Accordingly, the circuit court ruled that it would include a statement in the final judgment that "the collection of the assessment, [a]s indicated in Section 4 of [the financing agreement], has to be using . . . only a method of collection authorized by Chapter 197 of the Florida [S]tatutes, or otherwise authorized by Florida law." The final judgment includes this limitation and further provides that "[a]ny non-ad valorem assessments levied and imposed against affected real property must be collected

---

3. Section 17 of the financing agreement, which governs assignment of the agreement, also references Clean Energy's "right to pursue judicial foreclosure of the Assessment lien."

pursuant to the uniform collection method set forth in Section 197.3632, Florida Statutes."

The circuit court then ruled that the Broward County residents lacked standing because they had been voluntarily dismissed from the case. Accordingly, the circuit court granted Clean Energy's motion to strike their response to the order to show cause, and noted in the final judgment that the property owners, taxpayers, and citizens of Broward County had been removed from the case by a voluntary dismissal.

**ANALYSIS**

This Court has explained the standard of review for bond validation cases where the bond issuance is funded by special assessments:

> This Court performs expedited review in bond validation cases to "facilitate[ ] an adjudication as to the validity of bonds so as to provide assurance of the marketability of the bonds." City of Oldsmar v. State, 790 So. 2d 1042, 1050 (Fla. 2001). Our review authority in these cases is "circumscribed in scope and purpose," id. at 1049, and is generally limited to three issues: (1) whether the public body has the authority to issue bonds; (2) whether the purpose of the obligation is legal; and (3) whether the bond issuance complies with the requirements of law. See Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth., 795 So. 2d 940, 944 (Fla. 2001); State v. Osceola County, 752 So. 2d 530, 533 (Fla. 1999). However, where, as here, a bond issuance is funded by special assessments, we will apply an additional two-pronged test to evaluate whether those special assessments meet the requirements of the law. The Court in City of Winter Springs v. State, 776 So. 2d 255[, 257] (Fla. 2001), explained:
>
>> To comply with the requirements of the law, a special assessment funding a bond issuance must satisfy the

> following two-prong test: (1) the property burdened by the assessment must derive a special benefit from the service provided by the assessment; and (2) the assessment for the services must be properly apportioned among the properties receiving the benefit. See Lake County v. Water Oak Management Corp., 695 So. 2d 667, 668 (Fla. 1997) (citing City of Boca Raton v. State, 595 So. 2d 25, 30 (Fla. 1992)).

Citizens Advocating Responsible Envtl. Solutions, Inc. v. City of Marco Island, 959 So. 2d 203, 206 (Fla. 2007).

We have further explained that "[s]ubsumed within the inquiry as to whether the public body has the authority to issue the subject bond is the legality of the financing agreement upon which the bond is secured." State v. City of Port Orange, 650 So. 2d 1, 3 (Fla. 1994).

In this case, the financing agreement's references to judicial foreclosure are inconsistent with its requirement—and Florida law—that collection of non-ad valorem assessments must be accomplished pursuant to chapter 197's uniform method. See generally § 197.3632, Fla. Stat. (providing for the collection of assessments on the same bill as property taxes and for the issuance and sale of tax certificates and, ultimately, tax deeds if assessments are not paid); see also § 163.08(4), Fla. Stat. (providing that financing costs for qualifying PACE program improvements "may be collected as a non-ad valorem assessment[, which] shall be collected pursuant to s. 197.3632"). However, as the circuit court noted, the financing agreement limits Clean Energy to "appropriate legal remedies" for

collecting unpaid assessments, and as Clean Energy concedes, judicial foreclosure is not an appropriate legal remedy. Moreover, the financing agreement contains a severability clause, which provides that "[i]f any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, such holding will not invalidate or render unenforceable any other provision of this Agreement."

Because judicial foreclosure is not an appropriate legal remedy for collecting the non-ad valorem assessments, we find no error in the circuit court's decision to read the financing agreement in a manner that effectively severs this inappropriate remedy and limits Clean Energy to the appropriate legal remedy—also provided by the financing agreement—of collecting assessments pursuant to the uniform method. See Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005) ("As a general rule, contractual provisions are severable, where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations.").

Indeed, this Court's precedent supports reading bond documents in a manner that complies with Florida law. For example, in County of Palm Beach v. State, 342 So. 2d 56, 58 (Fla. 1976), we reversed the trial court's final judgment invalidating a bond issuance by Palm Beach County based on the trial court's conclusion that, although the County's bond resolution could have been read to provide for the proper use of bond proceeds for capital expenses, it could have also

been read to provide for the improper use of bond proceeds for operating expenses. In so holding, this Court found it important that the County had expressed its intent to only use the bond proceeds for proper projects.  Id.  We "accept[ed] the averments of the [County] Commission" and reversed, noting that "if any attempt is made to use bond proceeds in an improper manner an action for injunctive relief would lie."  Id.; see also Gate City Garage, Inc. v. City of Jacksonville, 66 So. 2d 653, 659 (Fla. 1953) (declining to read City's ordinance authorizing a bond issuance in a manner that reserved to the City a power regarding the sale and lease of the benefitted property that was not authorized by law).

While we agree with the circuit court that judicial foreclosure is not an appropriate remedy, we conclude that additional steps are required to implement the circuit court's ruling since the financing agreement will serve as the form for all financing agreements between Clean Energy and the property owners who participate in its PACE Program.  Specifically, we remand with instructions for the circuit court to require Clean Energy to amend the financing agreement to remove all references to judicial foreclosure and to file the amended agreement in the circuit court following its approval by Clean Energy's governing board.  Cf. State v. City of Venice, 2 So. 2d 365, 367-68 (Fla. 1941) (remanding to circuit court "with directions to require the amendment of the resolution and the bonds" to correct language regarding the pledged funds that was "too broad to be sustained"

- 9 -

and stating that "when the same are so amended the decree of validation . . . will stand affirmed").

Finally, we agree with the circuit court that the Broward County residents lack standing since Clean Energy's voluntary dismissal of all Broward County property owners, taxpayers, and citizens divested them of any justiciable interest in the bond validation proceeding.  Rich v. State, 663 So. 2d 1321, 1324 (Fla. 1995) (holding that a "person interested" and therefore entitled to intervene in a bond validation proceeding pursuant to section 75.07, Florida Statutes, "is anyone who has a justiciable interest in a bond validation proceeding because he or she stands to gain or lose something as a direct result of the bond issuance").

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's final judgment validating Clean Energy's bonds, but remand with instructions for the circuit court to require Clean Energy to amend the financing agreement as described herein.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Leon County – Bond Validations
     John C. Cooper, Judge – Case No. 13-CA-3457

John Stephen Menton of Rutledge Ecenia, P.A., and James C. Dinkins of Mark G. Lawson, P.A., Tallahassee, Florida,

    for Appellants

Edward George Guedes and Jeffrey Daniel De Carlo of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

    for Appellees