203 So.2d 497 (1967)
H.C. COON et al., Appellants,
v.
BOARD OF PUBLIC INSTRUCTION OF OKALOOSA COUNTY, Florida and On Behalf of South Okaloosa High School Special Tax District, Appellee.
No. 36642.
Supreme Court of Florida.
November 1, 1967.
Campbell & Rice, Crestview, for appellants.
Sanchez & Dickens, Tallahassee, for appellee.
THORNAL, Justice.
We have for review by appeal a final decree of a Chancellor upholding the constitutionality of Chapter 67-1809 (H.B. 3296), Laws of Florida, 1967, and re-affirming a prior decree validating an issue of school district bonds.
We must decide whether Chapter 67-1809, supra, a local law, cured certain procedural defects which initially adversely affected the bond issue.
In a previous appearance of this matter we had for consideration the original final decree of the Chancellor which validated the bond issue in question. In that proceeding it appeared that a petition had been filed with appellee School Board on January 11, 1966. The petition requested creation of a High School Tax area and the issuance of bonds. At the time there were 4,059 registered freeholders in the tax area. Of that number 739 signed the petition. On January 17, 1966, the Board held a hearing pursuant to Section 230.23 (11) (d), Florida Statutes, F.S.A. It then determined the necessity and desirability of creating the proposed tax area and called a special election. The election was held March 15, 1966 and failed for lack of participation.
On September 20, 1966, without benefit of another petition, the Board adopted a *498 second resolution calling for an election on November 8, 1966. This was again to decide whether the tax area should be created to issue $2,932,000 worth of school bonds. In this election the requisite number of freeholders approved the tax area and the bond issue.
The record discloses that on September 20, 1966, there were 7,881 qualified freeholders in the area. On November 8, 1966, the date of the election there were 8,590. It should be recalled that on January 11, 1966, the date of the initiating petition there were 4,059 freeholders, of whom 739 signed the petition. It was this petition which was used twice  on January 17, 1966 and on September 20, 1966  as the basis for the two elections. The first one failed. The second, held November 8, 1966, was successful.
The Chancellor had the view that the entire proceeding was valid, despite the fact that the original petition containing 739 names did not equal 10% of the total number of qualified freeholders  7,881  when the second resolution calling an election was adopted on September 20, 1966.
By an opinion filed May 31, 1967, since withdrawn, we held that the failure to have on file a petition containing the names of 10% of the then qualified freeholders when the second resolution was adopted on September 20, 1966, was fatal to the November 8, 1966, election held pursuant to that resolution. We, at that point, felt that the legislative intent, exhibited by Section 230.23(11) (d), Florida Statutes, F.S.A., supported the conclusion there reached. For the record it should be noted that Justices Roberts, Drew and Ervin dissented on the authority of State ex rel. Evans v. Barker, 121 Fla. 350, 163 So. 695 (1935), and, Board of Public Instruction for Escambia County v. State, 122 Fla. 19, 164 So. 516 (1935).
While a petition for rehearing was pending, the Legislature enacted Chapter 67-1809 (H.B. 3296) which became law on July 10, 1967. On July 19, 1967, we granted rehearing, withdrew our opinion of May 31, 1967, and remanded the whole matter to the Chancellor for reconsideration in the light of the 1967 Statute. Chapter 67-1809, supra, is simply a curative statute purporting to validate the bond issue now in question.
The matter recurred before the Chancellor upon remand in the instant case. By his decree he sustained the cited 1967 Statute and for a second time approved the validity of the proposed bonds. It is this decree which we now have for review.
It is now contended that the curative statute is itself unconstitutional. Appellant claims that it violates Article III, Section 20, Florida Constitution F.S.A. because it allegedly is a local act regulating the duties of a class of county officers. He claims that it violates Article III, Section 16, Florida Constitution because the body of the Act is much broader than the title. Finally, it is claimed that the statute, even though valid, does not correct the defects detected in the original proceeding. Appellants Coon, et al., who initially contested the validity of the bonds, have now perfected this appeal.
The defects which initially afflicted the proposed bond issue were merely procedural. The Legislature could have dispensed with those procedural requirements in their entirety. By a curative statute the Legislature has the power to ratify, validate and confirm any act or proceeding which it could have authorized in the first place. Dover Drainage District v. Pancoast, 102 Fla. 267, 135 So. 518 (1931). In Dover, the Court sustained the constitutionality of a local act which validated and confirmed the organization of a drainage district, the levying of assessments and the issuance of bonds. Even when the Supreme Court has prepared an opinion holding an issue of bonds to be invalid, as here, a special act passed as a curative statute pending the appeal has been held to be controlling in *499 sustaining the ultimate validity of the bonds. State v. Florida Inland Nav. Dist., 97 Fla. 839, 122 So. 249 (1929).
In Charlotte Harbor & N. Ry. Co. v. Welles, 78 Fla. 227, 82 So. 770 (1919), it was held to be the duty of this Court to take judicial notice of a validating statute enacted pending an appeal. Here the Court accorded to a local curative statute the same prestige and the same recognition as it had previously granted to similar general acts by expressly adopting the language of the opinion in Cranor v. Volusia County Commissioners, 54 Fla. 526, 45 So. 455 (1907). The Court in Cranor had relied upon Givens v. Hillsborough County, 46 Fla. 502, 35 So. 88 (1903). See also, Everglades Sugar and Land Co. v. Board of Sup'rs., et al., 78 Fla. 275, 82 So. 815 (1919). In the recent case of State v. County of Sarasota, 155 So.2d 543 (Fla. 1963), we accorded controlling effect to a local act which cured defects in the publication of a notice of a bond election.
The appellant attacks the validity of Chapter 67-1809, supra, with the contention that it is a local act which regulates the jurisdiction and duties of certain county officers in violation of Article III, Section 20, Florida Constitution. As noted above, this Court has on numerous occasions accorded full effect and validity to local curative statutes of this nature.
In direct response to appellant's challenge, however, it suffices to remind that when the basic purpose of a local law is valid, an incidental impact upon the duties of county officers will not produce its downfall. State ex rel. Glover v. Holbrook, 129 Fla. 241, 176 So. 99 (1937); Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771 (1928); State v. Florida State Imp. Commission, 48 So.2d 165 (Fla. 1950). In Jackson Lumber Co., supra, for example, it was held that a local act imposing on a board of county commissioners powers and duties incidental to issuing bonds and levying a tax for a county purpose, does not violate the Constitution as being a regulation of the duties of a class of officers. In the instant case, the primary objective of the curative statute was to validate the bonds, and to approve the mechanical procedures employed in activating the decision of the school board to borrow the money to build the school. Chapter 67-1809, supra, does not contravene the Constitution. Its title is sufficient, and, its content is adequate to cover the situation at hand. This disposes of the points raised on appeal.
The decree of the Chancellor upholding the statute, and reaffirming the validity of the bonds is affirmed.
It is so ordered.
CALDWELL, C.J., and ROBERTS, DREW and ERVIN, JJ., concur.