GRIMES, Justice.
Pursuant to article V, section 3(b)(3), of the Florida Constitution, we review Webster v. County of Orange, 531 So.2d 176 (Fla. 5th DCA 1988), because of direct conflict with Coon v. Board of Public Instruction, 203 So.2d 497 (Fla.1967).
On April 14, 1986, the Board of County Commissioners of Orange County adopted a resolution creating the Orange County Citizens Charter Government Study Committee for the purpose of determining the feasibility of a home rule charter govern *1034 ment in Orange County. The committee presented its recommendations to the board on July 11, 1986. At a public hearing held on August 14, 1986, the board accepted “in concept” the recommendations of the committee and authorized the county attorney to draft a proposed home rule charter for Orange County. The county attorney submitted a proposed charter ordinance to the board on August 29,1986. By memorandum dated September 12, 1986, the county attorney recommended to the board six amendments to the proposed charter. On September 22, 1986, the board conducted a public hearing to consider the ordinance approving the charter, at which the League of Women Voters of Orange County submitted additional amendments. Thereupon, the board adopted an ordinance approving the proposed charter which included the recommendations of the county attorney and the changes suggested by the League of Women Voters. At the election held on November 4, 1986, the proposed charter was approved.
Webster, a resident and registered voter of Orange County, filed suit attacking the validity of the charter. The trial court sustained the charter and entered summary judgment for the county. On appeal, the Fifth District Court of Appeal invalidated the charter for violation of the requirements of section 125.64(1), Florida Statutes (1985), that the election be held not more than ninety nor less than forty-five days subsequent to receipt of the proposed charter by the board of county commissioners. The court reasoned that the proposed charter had been “received” by the board when it was approved in final form on September 22, 1986. On motion for rehearing, the county argued that the Florida Legislature had recently enacted chapter 88-38, Laws of Florida, which had the effect of curing the irregularity of failing to hold the election within the forty-five to ninety-day time frame required by section 125.64(1) and ratifying the adoption of the Orange County charter. On the basis of the new legislation, the district court of appeal vacated its prior opinion and upheld the charter election. Five days later, that court vacated its subsequent order and thereafter upon reconsideration reinstated its opinion invalidating the charter election.
It is not unusual for curative legislation to be enacted for the purpose of validating elections against legal attacks based on technical defects in the election procedure. In Middleton v. City of St. Augustine, 42 Fla. 287, 322, 29 So. 421, 431 (1900), the Supreme Court first addressed the legality of statutes “curing defects in legal proceedings, where they amount to mere irregularities, not extending to matters of jurisdiction, and in the absence of constitutional limitations,” and adopted the following statement:
“If the thing wanting, or which failed to be done, and which constitutes the defects in the proceeding, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists of doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.”
Middleton, 42 Fla. at 322-23, 29 So. at 431 (quoting Judge Cooley’s work on Constitutional Limitations). The Court then addressed the specific curative legislation in issue:
In so far as the alleged defects and irregularities in the election held and as to the qualification of the voters thereat are concerned, it is a complete answer to say that the legislature had the power to authorize the municipality to issue the bonds in question without the submission at all of the question to an election by the taxpayers of the city, and, consequently, under the rule stated, it had the power by the subsequent curative act to declare that such election as was in fact held was a sufficient predicate for the proper issuance thereof, even though such election may have been irregular and defective, which fact we do not determine.
*1035 Id. at 326, 29 So. at 432. Although the Court ultimately remanded the case on another ground, the legitimacy of using a curative act to sustain the results of an election was established.
Three years later, the Court revisited the use of curative legislation in Givens v. Hillsborough County, 46 Fla. 502, 35 So. 88 (1903). The case is noteworthy because the curative act in question was passed after the Court itself had declared Hillsbor-ough County’s proposed bond issue that had been approved by the voters to be invalid. The Court rejected the argument that “the legislation is a usurpation of judicial power by the legislature,” id. at 506, 35 So. at 90, and instead declared that:
The authority of the county officials to make the issue was questioned, and the court held that under the then existing conditions they were without such power. The curative act of the legislature did not question the correctness of this decision nor attempt to adjudicate the regularity of the previous acts of the county commissioners, but recognizing the binding force of the judgment of the court, undertook to confer authority where before there was none.
Givens, 46 Fla. at 506, 35 So. at 90.
The use of curative legislation to validate irregularities in elections has also been approved in more recent cases. See, e.g., County of Palm Beach v. State, 342 So.2d 56 (Fla.1976); Coon v. Board of Public Instruction, 203 So.2d 497 (Fla.1967); State v. County of Sarasota, 155 So.2d 543 (Fla.1963).
The Fifth District Court of Appeal obviously recognized the weight of this precedent when it first vacated its original opinion. However, the court later concluded that the validity of chapter 88-38 and its effect on the charter election were not proper issues in the case and that if those issues were to be judicially determined, it should be done in a new proceeding. No one could fault this ruling if the curative legislation had not been enacted until after the current litigation had become final. However, chapter 88-38 became law at a time when the case involving the challenge to the validity of the charter election was still pending in the Fifth District Court of Appeal. The case was in essentially the same posture as that in Coon v. Board of Public Instruction.
In Coon, this Court was passing on the validity of an issuance of school district bonds which required an affirmative vote of the registered freeholders. A petition had been filed with the school board requesting the creation of a high school tax area and the issuance of bonds for school construction. Of the 4,059 registered freeholders in the tax area, 739 had signed the petition. The school board called a special election which failed for lack of participation. Several months later, without the benefit of another petition, the board adopted a second resolution calling for another election. At this election the requisite number of freeholders approved the tax area and the bond issue. A subsequent court challenge to the proceeding was rejected by the circuit court. However, on appeal the Supreme Court issued an opinion invalidating the proceeding because at the time of the adoption of the second resolution, the number of qualified freeholders had increased to 7,881 which had the effect of causing the 739 names on the original petition to be short of the ten percent of the total number of qualified freeholders required to sign such a petition. While a petition for rehearing was pending before the Supreme Court, the legislature enacted a curative statute purporting to validate the bond issue in question. As in the instant case, several attacks were made on the validity of the curative statute. The court rejected each of these contentions and went on to hold that it was obligated to accord controlling effect to a statute passed during the pendency of litigation which was intended to cure procedural defects concerning a local election. The Court reversed its previous ruling and upheld the validity of the bonds.
Thus, it is evident that the Fifth District Court of Appeal should have passed on the challenges to the validity of the curative statute. Because the Fifth District Court *1036 of Appeal did not do so, we shall undertake this responsibility.
The pertinent text of chapter 88-38 stated:
Section 1. Section 125.82, Florida Statutes, is amended to read:
125.82 Charter adoption by ordinance. —As a supplemental and alternative way to the provisions of ss. 125.60-125.64, inclusive, the board of county commissioners may propose by ordinance a charter consistent with the provisions of this part and provide for a special election pursuant to the procedures established in s. 101.161(1) with notice published as provided in s. 100.342 s. 125.64 without-regard to the-time limitation contained in subsection 125.64(3), The time period provided in s. 125.64 does not apply to the proposal of a charter by ordinance under this section.
Section 2. Any charter proposed under section 125.82, Florida Statutes, which was adopted by vote of the electors at an election conducted and noticed in conformance with the requirements of sections 101.161(1) and 100.342, Florida Statutes, is hereby ratified.
Webster first argues that this was a special act passed in the guise of a general act which was not enacted by the procedure required for special acts by the constitution and the laws of Florida. It is evident from the reports of the House and Senate Committee staffs that the invalidation of the Orange County charter provided the impetus for the passage of chapter 88-38. However, as worded, chapter 88-38 is not limited to Orange County because it applies to any county which has adopted its charter pursuant to section 125.82 and complied with the requisite statutes concerning the election. Moreover, there has been no showing that only Orange County is affected by this legislation.[1] In fact, one of Webster’s other arguments is that chapter 88-38 is too broad because it encompasses various other counties which have adopted home rule charters. We are convinced that chapter 88-38 was a general law rather than a special act. Webster’s other constitutional attacks on chapter 88-38 are so clearly without merit that they need not be discussed.
The final question is whether the charter of Orange County met the requirements of section 2 of chapter 88-38 so as to be entitled to ratification. First, it is clear that Orange County proposed its charter by ordinance pursuant to section 125.82, Florida Statutes (1985), rather than use of a charter commission under sections 125.-60-125.64, Florida Statutes (1985).[2] Finally, it is also undisputed that there was full compliance with the requirements of section 101.161(1) concerning the form of the ballot and section 100.342, Florida Statutes (1985), with respect to publication of notice of the election. Thus, we hold that chapter 88-38, Laws of Florida, is a valid statute which had the effect of ratifying the adoption of the home rule charter for Orange County.
We quash the decision of the district court of appeal and remand for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, SHAW, BARKETT and KOGAN, JJ., concur.

. We note that in Givens v. Hillsborough County, 46 Fla. 502, 35 So. 88 (1903), the curative act which cured the procedural defects in the election was held to be a general statute even though it affected only Hillsborough County.

. The Fifth District Court of Appeal accepted this proposition but held that section 125.82, Florida Statutes (1985), did not waive the requirement of complying with the time limitations of section 125.64(1), Florida Statutes (1985). Section 1 of chapter 88-38, Laws of Florida, now makes it clear that the time limitations of section 125.64(1) are inapplicable to charters proposed by ordinance under section 125.82.