820 So.2d 385 (2002)
Andres F. TEJADA, Appellant,
v.
In re FORFEITURE OF THE FOLLOWING DESCRIBED PROPERTY: $406,626.11 IN U.S. CURRENCY, Appellee.
No. 3D00-3145.
District Court of Appeal of Florida, Third District.
May 29, 2002.
Rehearing Denied July 19, 2002.
*386 J. James Donnellan, III, Miami, for appellant.
Katherine Fernandez Rundle, State Attorney, and Israel Reyes, Assistant State Attorney; Adorno & Zeder, P.A., and Raoul G. Cantero, III, Miami, and Donna A. Weston, for appellee.
Before GREEN, SHEVIN, and RAMIREZ, JJ.
RAMIREZ, J.
Andres F. Tejada appeals a final order in a civil forfeiture action dismissing his claim to $406,626.11 in U.S. currency seized from his Florida bank account. The trial court based its dismissal of Tejada's claim upon section 896.106, Florida Statutes (2000), which codified what is commonly referred to as the "fugitive disentitlement doctrine." We affirm because the statute was not impermissibly applied retroactively.

I.
The facts are undisputed. Tejada lives in Cali, Colombia. He uses a Miami post office box as a mailing address, and has received mail at several places in the United States, including Florida and Louisiana, since about 1987. He also has a United States social security number. Tejada maintained a bank account in a Coral Gables, Florida branch of Citibank.
*387 In 1997, Tejada began depositing money orders into his Citibank account several times a day. Each money order was purchased in New York. In that state, any person who purchases more than $3,000 in money orders in a single transaction must provide identification and sign a log with the seller. Most of Tejada's money order purchases were between $2,000 and $2,500. The money orders were sent incomplete from New York to Colombia, where Tejada completed and returned them to the United States for deposit into the Citibank account. Tejada's deposits were in amounts of $9,950 each. His account also showed transfers of large amounts of currency to accounts in Switzerland, Japan, and Colombia. For example, he sent two transfers of $100,000 to Switzerland.
The State Comptroller's Office supplied investigators from the South Florida Impact Task Force with a Suspicious Activity Report that Citibank had filed regarding Tejada's account. The report was based on a recorded conversation between Tejada and Citibank representatives, as well as on the account's transaction activity. In August 1997, the City of Coral Gables, on behalf of the Task Force, seized the funds in the account under the Florida Contraband Forfeiture Act, sections 932.701-07, Florida Statutes (1995). The City notified Tejada of its intention to forfeit the funds and filed a complaint for forfeiture. Tejada filed an answer in which he refused, on Fifth Amendment grounds, to respond to the complaint.
Soon thereafter, the United States Attorney for the Southern District of Florida filed a criminal complaint charging Tejada with illegal money transmitting and other unlawful monetary transactions. The federal district court issued a warrant for his arrest. On December 16, 1998, a federal grand jury indicted Tejada. Tejada has never submitted to the jurisdiction of the United States to answer to the federal charges against him.
In 1998, the Task Force filed a motion to dismiss,[1] arguing that the "fugitive from justice" doctrine prohibited Tejada from claiming an interest in the seized funds because he had refused to submit to the jurisdiction of the United States courts. The trial court denied the motion without prejudice, presumably on the authority of Degen v. United States, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). The United States Supreme Court in Degen recognized, for the first time, the applicability of fugitive disentitlement in a civil case but held that the doctrine did not permit a federal district court to enter summary judgment in favor of the government in a civil forfeiture action based on a claimant's criminal fugitive status. Id. at 827-29, 116 S.Ct. 1777. The Supreme Court instead required a case specific analysis to determine whether the invocation of the fugitive disentitlement doctrine was warranted. The Court specifically stated, however, that it was not "intimat[ing] a view on whether enforcement of a disentitlement rule under proper authority would violate due process." Id. at 828, 116 S.Ct. 1777. [Emphasis added].
In 2000, the Florida legislature enacted section 896.106, effective July 1, 2000. The statute codified the fugitive disentitlement doctrine and provides:
A person may not use the resources of the courts of this state in furtherance of a claim in any related civil forfeiture action or a claim in a third-party proceeding in any related forfeiture action if *388 that person purposely leaves the jurisdiction of this state or the United States; declines to enter or reenter this state to submit to its jurisdiction; or otherwise evades the jurisdiction of the court in which a criminal case is pending against the person.

II.
We must first address the precise issue that the United States Supreme Court in Degen did not: whether enforcement of a disentitlement rule under proper authority violates due process. We hold that it does not.
The fugitive disentitlement doctrine is more than a century old. See Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); Smith v. United States, 94 U.S. 97, 24 L.Ed. 32 (1876). It is a doctrine that springs out of the inherent power of courts to enforce their judgments and protect their dignity. See Martha B. Stolley, Sword or Shield: Due Process and the Fugitive Disentitlement Doctrine, 87 J.Crim. L. & Criminology 751, 778-79 (1997).
The doctrine has been recognized in Florida in criminal cases. In Jaffe v. Snow, 610 So.2d 482 (Fla. 5th DCA 1992), the court held that the spouse of a "fugitive from justice" could not call upon the resources of Florida courts to enforce a money judgment obtained in Canada against a Florida company in connection with a claim for wrongful kidnapping, which stemmed from actions taken to return the fugitive to Florida to answer organized crime charges. We have also applied the "fugitive from justice" doctrine to civil forfeiture cases when they arise out of criminal charges. In Garcia v. Metro-Dade Police Dep't., 576 So.2d 751, 752 (Fla. 3d DCA 1991), we dismissed an appeal solely because the appellant failed to appear for his criminal court trial and remained a fugitive, finding his conduct duplicitous and "repugnant to our inherent sense of equity." Id. at 752. Thus, but for the Degen decision, there would be little doubt as to the constitutionality of losing the right to litigate in a forfeiture proceeding connected with a criminal prosecution from which one has absconded.
Degen recognized that there are five reasons for applying the doctrine: 1) the risk of delay or frustration in determining the merits of the claim; 2) the unenforceability of the judgment; 3) the compromising of a criminal case through the use of civil discovery mechanisms; 4) the indignity visited on the court based upon the fugitive's absence from a criminal proceeding; and 5) flight deterrence. See Degen, 517 U.S. at 825-28, 116 S.Ct. 1777. The Supreme Court held that to dismiss a case based on the latter two reasons alone was an excessive response to those concerns, particularly where such action was predicated only on the court's inherent power. Id. at 828-29, 116 S.Ct. 1777. The import of the decision was that Congress could grant district courts such a power. By enacting section 896.106, that is precisely what the Florida legislature has done.

III.
Tejada also argues that section 896.106 is incorrectly being applied retroactively. We disagree. All that Tejada had to do to avoid the application of the statute was to renounce his status as a fugitive. The trial court did not dismiss his claim because Tejada had used the resources of the courts prior to the application of the statute. The claim was properly dismissed because, after the effective date of the statute, Tejada would be using the resources of our courts to litigate his entitlement to funds which the Task Force *389 is seeking to forfeit. Tejada would have the State of Florida empanel a jury and utilize our scarce courtroom resources to pursue his claim after the effective date of the statute. As a practical matter, counsel for Tejada could never explain how this would have been more than an exercise in futility.
It is Tejada's flight or his continued refusal to appear in the face of judicial action that is the critical predicate to his disentitlement. His own actions or inactions as a fugitive after the enactment of the statute is what prevents him from pursuing his claim to the funds. An oft-quoted definition of retroactivity is that of Justice Story in Society for the Propagation of the Gospel v. Wheeler, 22 F. Caves. 756, 767 (C.C.D.N.H.1814) quoted in Sturges v. Carter, 114 U.S. 511, 519, 5 S.Ct. 1014, 29 L.Ed. 240 (1885): "[E]very statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." (Emphasis added). As the critical predicate to disentitlement is the continued refusal to answer the pending criminal charges, Tejada's rights are not impaired by his conduct preceding the effective date of the statute, but by his absence after its effective date of July 1, 2000.[2]
"A statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf v. USI Film Prods., 511 U.S. 244, 269-70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). (citation omitted) (footnote omitted). See also Metropolitan Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494, 499 (Fla.1999), quoting Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L.Rev. 692 (1960) ("A retroactive statute is one which gives to preenactment conduct a different legal effect from that which it would have had without the passage of the statute."). Professor Hochman also wrote that "[t]he most obvious kind of retroactive statute is one which reaches back to attach new legal rights and duties to already completed transactions." Hochman, 73 Harv. "L.Rev. at 692. The only completed transaction prior to the enactment of section 896.106 was the alleged money laundering which took place through Tejada's bank account. Certainly, Tejada's failure to enter the State of Florida to submit to its jurisdiction was not a "completed transaction."
Professor Hochman ascribes the fundamental reason for condemning retroactive legislation as being that persons cannot plan their conduct with reasonable certainty of the legal consequences. Id. We would have to focus on the alleged money laundering as being the operative facts to ascribe any significance to Tejada's planning, to the exclusion of his continuing refusal to submit himself to the jurisdiction of our courts. Tejada had ample opportunity to make travel plans subsequent to the enactment of the statute to avoid its implications.

IV.
It is even doubtful that the statute was necessary to a dismissal of Tejada's *390 claim. The Degen decision did not foreclose a dismissal in all cases. As we have seen, Degen recognized that there are five reasons for applying the disentitlement doctrine. The Degen court held that to dismiss a case based on only the indignity visited on the court and for deterrence reasons was an excessive response to those concerns. Furthermore, the Task Force has suffered from delay or frustration in determining the merits of the claim. At one point, the case was almost dismissed for lack of prosecution. In fact, Tejada strenuously opposed the reinstatement of the lawsuit in a Motion for Reconsideration of Order Vacating Judgment of Dismissal thereby causing an even greater delay. In effect, the case had been pending for almost three years when Tejada's claim was dismissed. During that time, the Task Force had been unable to depose Tejada or obtain any other discovery from him because of his absence from the jurisdiction.
Even in the absence of the statute, Tejada's status would satisfy all the requirements for the application of the doctrine. See Matsumoto v. Matsumoto, 171 N.J. 110, 128, 792 A.2d 1222, 1233 (2002). Tejada, as a party to a criminal or civil proceeding, is a fugitive; Tejada's fugitive status has a significant connection to the issue with respect to which the doctrine is sought to be invoked; invocation of the doctrine is necessary to enforce the judgment of the court or to avoid prejudice to the Task Force caused by Tejada's fugitive status; and invocation of the doctrine is not an excessive response. See also Magluta v. Samples, 162 F.3d 662, 664 (11th Cir.1998).
As stated above, the case was almost dismissed for lack of prosecution. Tejada has resisted his deposition, not only by invoking his Fifth Amendment rights, but by insisting on being served with a subpoena, claiming he is a non-party to the lawsuit. Thus, Tejada has sought to benefit from his fugitive status to the detriment of the Task Force. We believe that, after three years, dismissal of his claim, would not have been excessive even in the absence of the statute.

V.
Prior to Degen, courts had routinely applied the fugitive disentitlement doctrine to civil forfeitures. See, e.g., United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Fla., 868 F.2d 1214 (11th Cir.1989). It was only after Degen that this practice was called into question. We view this situation as analogous to a curative statute by which "the [l]egislature has the power to ratify, validate and confirm any act or proceeding which it could have authorized in the first place." Coon v. Board of Public Instruction of Okaloosa County, 203 So.2d 497, 498 (Fla.1967).
As Degen's underpinnings centered on the lack of inherent authority on the part of the federal district court to dismiss a civil forfeiture action under the fugitive disentitlement doctrine, the enactment of section 896.106 can be viewed as remedial. As stated in Rothermel v. Florida Parole and Prob. Comm'n, 441 So.2d 663, 664 (Fla. 1st DCA 1983), "statutes which do not alter contractual or vested rights but relate only to remedies or procedure are not within the general rule against retrospective operation and, absent a saving clause, all pending proceedings are affected."

VI.
For the reasons stated, we affirm the dismissal of Tejada's claim to the currency seized from his Citibank account.
SHEVIN, J., concurs.
*391 GREEN, J. (dissenting).
Not only has the majority misinterpreted the Supreme Court's holding in Degen v. United States, supra, it has also completely misapplied the law prohibiting the retroactive application of a statute. Accordingly, I am compelled to dissent.
The underlying procedural facts in Degen are remarkably similar to the facts in this case. Brian Degen was indicted for distributing and trafficking marijuana, money laundering and related crimes. That same day, the federal government filed a civil forfeiture action against Degen's real and personal property. Before Degen was indicted, he had moved with his family to Switzerland.[3] Degen refused to return to the United States to face the criminal charges against him, but had counsel file verified claims to his property and answers in the civil forfeiture action.
The government moved to strike Degen's claims and answers, and moved for summary judgment arguing that Degen was not entitled to be heard in the civil forfeiture action because he was a fugitive from justice in the related criminal case. The district court, tracing the history of the fugitive disentitlement doctrine back to its inception, found that the doctrine should be extended to apply to Degen's case.[4]See United States v. Real Property Located at Incline Village, 755 F.Supp. 308, 310 (D.Nev.1990). The Ninth Circuit affirmed, concluding that the criminal action and the civil forfeiture action were closely enough related to necessitate an extension of the disentitlement doctrine. United States v. Real Property Located at Incline Village, 47 F.3d 1511, 1516 (9th Cir.1995). The Ninth Circuit denied rehearing; see Incline Village, 47 F.3d at 1522; and the United States Supreme Court granted certiorari. Degen v. United States, 516 U.S. 1070, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).
In Degen, the Supreme Court set forth to specifically answer the following question:
whether the [fugitive disentitlement] doctrine should be extended to allow a court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution. (emphasis added).
517 U.S. at 827, 116 S.Ct. 1777. Justice Kennedy, writing for a unanimous court, concluded that the fugitive disentitlement doctrine did not permit a court, acting under its inherent authority, to enter judgment against a fugitive claimant in a civil forfeiture action on grounds that the claimant failed to submit to the jurisdiction of the court to defend against criminal charges. Id. at 823-28, 116 S.Ct. 1777. The court did, however, recognize that although the doctrine could not be applied under a court's inherent power, that this power could be controlled or overridden by statute or rule. Thus, in short, the court held that the fugitive disentitlement doctrine could not be extended to apply in *392 civil forfeiture cases, absent a statute or rule.
The majority nevertheless states in this case that even under Degen, Tejada's dismissal was proper. Specifically, the majority contends that:
The Degen decision did not foreclose a dismissal in all cases. As we have seen, Degen recognized that there are five reasons for applying the disentitlement doctrine.
* * *
Tejada's status would satisfy all the requirements for the application of the doctrine. (citation omitted). Tejada, as a party to a criminal or civil proceeding, is a fugitive; Tejada's fugitive status has a significant connection to the issue with respect to which the doctrine is sought to be invoked; invocation of the doctrine is necessary to enforce the judgment of the court or to avoid prejudice to the Task Force caused by Tejada's fugitive status, and invocation of the doctrine is not an excessive response.
See Maj. op. at 389-390. This contention is completely implausible. Justice Kennedy's discussion of the five underlying rationales for the fugitive disentitlement doctrine was a historical perspective explaining the Supreme Court's precedent. See Stolley, 87 J.Crim. L. & Criminology at 766-68 (1997). The procedural concerns raised by the majority are the same as those raised in Degen. Both men had federal charges against them, both were living in a foreign country and refused to come to the United States to face the charges against them, and both men timely raised claims in the civil forfeiture actions against their property, contesting its taking. Yet, the Supreme Court in Degen found that Degen's fugitive status could not disentitle him from contesting his civil forfeiture case. The majority, here nevertheless, finds that Tejada's claims should be dismissed. Clearly, the majority opinion is at odds with the United States Supreme Court's reasoning in Degen.[5]
Now that the holding of Degen is clear, the question at issue remains whether section 896.106 can be constitutionally applied to Tejada's case. Tejada correctly asserts that it cannot.
It is well-established in Florida law, that statutes which create new rights or take away existing rights are substantive in nature and may not be applied retroactively. Serna v. Milanese, Inc., 643 So.2d 36, 38 (Fla. 3d DCA 1994). See also State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995) (stating that: "[t]he general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively."); Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla. 1994) (same). Moreover, in the absence of an express legislative statement to the contrary, statutory changes which affect substantive rights or create new obligations or liabilities are presumed to apply prospectively.[6]Hassen v. State Farm *393 Mut. Auto. Ins. Co., 674 So.2d 106, 108 (Fla.1996), Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 (Fla.1994).
It is also well settled that "[p]roperty rights are among the basic substantive rights expressly protected by the Florida Constitution." Department of Law Enforcement v. Real Property, 588 So.2d 957, 964 (Fla.1991). See also Shriners Hosps. for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla.1990). As a substantive right, the right of a person to defend his/her property against an attack in court is comparable to a plaintiff's right to sue. Degen v. United States, 517 U.S. 820, 828, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). The right to contest the forfeiture of one's property, is secured by the Due Process Clause of the United States Constitution; see Degen v. United States, 517 U.S. at 822-23, 116 S.Ct. 1777, and Article 1, Section 9 of the Florida Constitution. See Department of Law Enforcement v. Real Property, 588 So.2d at 966.
Section 896.106 is a statutory waiver of a fugitive's due process rights in a civil forfeiture proceeding. See United States v. Eng, 951 F.2d 461, 466 (2nd Cir.1991). Such a waiver can only be substantive in nature. Serna v. Milanese, Inc., 643 So.2d at 38 (statute which takes away an existing right is substantive in nature). Thus, pursuant to established laws of statutory construction, section 896.106 simply cannot be applied retroactively. State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d at 61 (court must refuse to apply statute retroactively if it impairs vested rights, creates new obligations, or imposes new penalties).
When Tejada timely filed his answer in 1998, he had statutorily secured his claim to contest the forfeiture. See § 932.704(c), Fla. Stat. (1995).[7] At that time, the circuit court did not have the authority to strike Tejada's claim and enter judgment against him (or any fugitive claimant in a civil forfeiture case) by virtue of his fugitive status.[8]Degen, 517 U.S. at 824, 116 S.Ct. 1777. This case then proceeded onward for nearly two-years before the passage of section 896.106. It was only after that statute was enacted that the City renewed its motion to dismiss, which the trial court ultimately granted. Nothing had changed in this case, including Tejada's status as a fugitive, other than the legislature's enactment of section 896.106.
The majority, however, asserts that it is Tejada's continued status as a fugitive, rather than the trial court's application of section 896.106, that caused Tejada's claim to fail.[9]See Maj. op. at 389. This reasoning *394 completely misses the point. The majority correctly recognizes that a statute
which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attached a new disability, in respect to transactions or considerations already past, must be deemed retrospective.
Maj. op at 389, citing Sturges v. Carter, 114 U.S. 511, 519, 5 S.Ct. 1014, 29 L.Ed. 240 (1885) quoting Society for the Propagation of the Gospel v. Wheeler, 22 F. Caves. 756, 767 (C.C.D.N.H.1814). However, what the majority fails to grasp is that the transaction at issue here is not Tejada's refusal to answer the criminal charges against him. Rather, the transaction at issue is the timely filing of a responsive pleading which created a claim against the forfeiture of Tejada's property. Once Tejada timely filed his claim, he thereafter had a vested due process right to pursue that claim. See, e.g., State, Dept. of Transp. v. Knowles, 402 So.2d 1155 (Fla.1981) (statutory amendment, which provided exclusive remedy for injury suffered as a result of an act by an officer, employee or state agent would be a claim against the governmental entity, could not be applied to plaintiff who had a vested right to sue agent prior to the enactment of the statute); Meli v. Admiral Ins. Co., 413 So.2d 135 (Fla. 3d DCA 1982) (statute providing absolute immunity to public employees could not be retroactively applied to cause of action filed before its effective date because such application would be an abrogation of plaintiff's rights); In re: Estate of Jelley, 360 So.2d 1313 (Fla. 2d DCA 1978) (it would be unconstitutional for court to give retroactive effect to a shortened statute of limitations when to do so would bar a cause of action existing on the effective date of the statute). It was the impermissible retroactive application of section 896.106 that disenfranchised him of his previously vested right to participate in this forfeiture proceeding. See Metropolitan Dade County v. Chase Federal Housing Corp., 737 So.2d 494, 499 (Fla.1999), quoting Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L.Rev. 692 (1960) ("A retroactive statute is one which gives to pre-enactment conduct a different legal effect from that which it would have had without the passage of the statute.").
The majority also asserts retroactive application of the statute is appropriate here because section 896.106 is merely remedial in nature.[10]See Rothermel v. Florida Parole & Probation Comm'n, 441 So.2d 663, 664 (Fla. 1st DCA 1983) (statutes which do not alter contractual or vested rights but relate only to remedies or procedure are not within the general rule against retrospective operation). As stated above, I believe that this statute affects a substantive fundamental right, i.e. the right to defend one's property. That right is clearly protected by both the Florida and United States Constitutions. Thus, section 896.106 is far more than a remedial or procedural statute, and simply cannot be retroactively applied.
Finally, given the unlawful retroactive application of section 896.106 in this case, it is not necessary for us to reach Tejada's constitutional challenge to this statute. See The Florida Bar v. Rayman, 238 So.2d 594, 596 (Fla.1970) (challenges to the *395 constitutionality of a statute will be decided only when necessary to the disposition of a cause).
Accordingly, for all of the above reasons, I would reverse the dismissal of Tejada's claim.
NOTES
[1] Although labeled as a motion to dismiss, it was in effect a motion to strike Tejada's answer and entry of summary judgment.
[2] See also Ray H. Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Nw. U.L.Rev. 540, 544 (1956) (defining a retroactive statute as one that "purports to determine the legal significance of acts or events that have occurred prior to the date of its enactment").
[3] Degen maintained both Swiss and United States citizenship.
[4] "The fugitive disentitlement doctrine originated in the late 19th century as an equitable principle of criminal appellate procedure. Traditionally, a convicted criminal defendant who flees from justice while his appeal is pending is `disentitled' from pursing a criminal appeal. Since its inception, the courts have developed and refined the doctrine. Today, it is invoked in both criminal and civil contexts. The doctrine generally provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades." Martha B. Stolley, Sword or Shield: Due Process and the Fugitive Disentitlement Doctrine, 87 J.Crim. L. & Criminology 751 (1997).
[5] The majority claims that the Task Force has "suffered from delay or frustration" as a result of Tejada's fugitive status, and that this delay supports the trial court's dismissal. See Maj. op. at 389. Common sense dictates that Tejada cannot be penalized for opposing the reinstatement of this suit after it was dismissed for lack of prosecution. In addition, Tejada's alleged failure to attend a deposition was not litigated below, and is therefore not before us to decide. See Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999) (a claim not raised in the trial court will not be considered on appeal).
[6] "Even when the legislature does expressly state that a statute is to have retroactive application, this Court has refused to apply a statute retroactively if the statute imparis vested rights, creates new obligations, or imposes new penalties." State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d at 61.

Here, there is no legislative statement directing that section 896.106 be applied retroactively.
[7] This section provides:

The court shall require any claimant who desires to contest the forfeiture to file and serve upon the attorney representing the seizing agency any responsive pleadings and affirmative defenses within 20 days after receipt of the complaint and probable cause finding.
§ 932.704(c), Fla. Stat. (1995).
[8] The pre-Degen federal and Florida cases relied on by the majority to support its position, are inapplicable to the case at bar. Moreover, they do not involve the application of the fugitive disentitlement doctrine to a civil forfeiture case.
[9] In fact, the majority writes that "[a]ll Tejada had to do to avoid the application of the statute was to renounce his status as a fugitive." This is circular reasoning at best and is somewhat comparable to stating that it is all right if a criminal suspect under custodial interrogation isn't given Miranda warnings, because if the suspect hadn't committed the crime and been arrested there wouldn't have been need for the warnings.
[10] "A remedial statute is a legislative enactment that intends to afford a private remedy to a person injured by a wrongful act. It is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." Walsh v. Arrow Air, Inc., 629 So.2d 144, 148 (Fla. 3d DCA 1993) quashed on other grounds, Arrow Air, Inc. v. Walsh, 645 So.2d 422 (Fla.1994).