# Third District Court of Appeal

## State of Florida

Opinion filed December 4, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0230
Lower Tribunal No. 22-3627
_____

## Village of Palmetto Bay, Florida, et al.,
Appellants,

vs.

## Miami-Dade County, Florida,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Falk, Waas, Solomon, Mendlestein & Davis, P.A., Norman M. Waas, Jessica M. Hernandez, and John C. Dellagloria, Village Attorney, for appellants.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Annery Pulgar Alfonso, Bruce Libhaber, and Dale P. Clarke, Assistant County Attorneys, for appellee.

Before FERNANDEZ, LINDSEY, and MILLER, JJ.

MILLER, J.

This appeal arises out of a long-debated bridge construction project. Miami-Dade County intends to construct a bridge over the Cutler Drain Canal C-100, which is located within the confines of the Village of Palmetto Bay (the "Village") and fund the project from unencumbered road impact fees reserved in trust for the purpose of funding infrastructure. During a declared state of emergency precipitated by the COVID-19 pandemic, the Miami-Dade County Board of County Commissioners dispensed with certain procedural requirements, known as the three-day and four-day rules, and approved the project without advance agenda notice or committee referral. The parties reached an impasse in the statutorily circumscribed alternative dispute resolution process, and the Village and two of its residents subsequently filed an injunctive and declaratory relief action in the circuit court seeking to halt construction. The trial court granted summary judgment in favor of the County, finding that the procedural requirements were properly suspended due to the stated emergency and funding for the project did not run afoul of either the Miami-Dade Home Rule Charter or Miami-Dade Code. That decision is under review.

**I**

For nearly two decades, residents have debated the proposed construction of a bridge over Cutler Drain Canal C-100 at Southwest 87th

Avenue from Southwest 164th Street to 163rd Terrace (the "Bridge Project"). Proponents of the Bridge Project argue it will alleviate traffic congestion and allow for more efficient movement of vehicles from south to north. Opponents contend construction will erode the quality of the neighborhoods abutting the project, increase local traffic, and divert some vehicles to another heavily traversed street. Because 87th Avenue is a county-controlled road, Miami-Dade County possesses ultimate decision-making authority over the Bridge Project.

On May 5, 2020, the Board of County Commissioners (the "Board") adopted Ordinance No. 20-38 in response to the COVID-19 pandemic (the "COVID Ordinance"). The COVID Ordinance authorized the chairperson to place matters directly on the agenda without committee review during a declared state of emergency. This provision operated "regardless of whether the matter ha[d] been previously (i) assigned to, (ii) referred to, (iii) considered by, or (iv) scheduled for public hearing before a committee," and the COVID Ordinance suspended the so-called three-day and four-day rules requiring advanced calendaring and committee referral.

On February 1, 2021, the Board placed the Bridge Project on the following day's meeting agenda. On February 2, 2021, the Board allowed members of the public to speak on the merits of the Bridge Project. Several

individuals, including certain elected officials, addressed the Board. The Board then adopted County Resolution No. R-88-21 (the "Bridge Resolution"), approving the Bridge Project and allocating $3.1 million in unencumbered road impact fees from the County's fiscal year 2020–2021 budget to finance the infrastructure.

Miami-Dade Fire Rescue subsequently conducted a study and concluded the Bridge Project "would provide connectivity for public safety and emergency service vehicle[s] and enhance fire-rescue response to the area."

On February 8, 2021, the Village convened a Special Council Meeting and passed Resolution No. 2021-18, initiating conflict resolution proceedings against the County. See generally § 164.1052, Fla. Stat. (2021). Resolution No. 2021-18 determined that the Bridge Resolution violated section 1.02 of the Miami-Dade Charter, which provides that funds may only be appropriated by ordinance, and the County used the COVID Ordinance to improperly circumvent traditional notice requirements for a nonemergency matter.

On March 12, 2021, the Village convened a conflict assessment meeting with the County to "discuss the issues pertaining to the conflict and an assessment of the conflict from the perspective of each governmental entity involved," as provided under section 164.1053(1), Florida Statutes

4

(2021) ("After the initiation of the conflict resolution procedure, and after proper notice by certified letter has been given, a conflict assessment meeting shall occur. The meeting shall be scheduled to occur within 30 days of the receipt of the letter initiating the conflict resolution procedure."). Three days later, the entities convened a second conflict assessment meeting.

On March 18, 2021, the Miami-Dade County Transportation Planning Organization (the "TPO") approved the Bridge Project following a public hearing. Approval required an amendment including the proposed construction in the 2045 Long Range Transportation Plan and 2021 Transportation Improvement Program. The Village's mayor and vice mayor, along with several councilmembers and residents, attended the meeting and expressed opposition to the Bridge Project. Four days later, the Village convened another Special Council Meeting and voted to initiate conflict resolution proceedings with the TPO, as provided in section 164.1052.

On June 2, 2021, the Board convened a public hearing and adopted Ordinance No. 21-41, approving the fiscal year 2020–2021 mid-year budget's adjustments and amendments. The ordinance reflected an allocation of $3.1 million from the Reserve for Future Capital Projects category of the Department of Transportation and Public Works Road Impact Fee Program for the Bridge Project. On September 28, 2021, the Board

5

adopted Ordinance No. 21-98, approving the 2021–2022 County budget. This ordinance reflected an allocation of over $3.3 million in funding for the Bridge Project, and it was approved following public notices and hearings.

Some seven months later, both the County and TPO declared an impasse in the conflict resolution proceedings. The Village brought suit the following month, and the parties filed dueling summary judgment motions. The trial court entered final judgment in favor of the County, and this appeal ensued.

## II

A summary judgment ruling is subject to de novo review. See Reyes v. Baptist Health S. Fla. Found., Inc., 360 So. 3d 438, 440 (Fla. 3d DCA 2023). We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A).

## A

The Village contends the Board ran afoul of the County Code by relying on the COVID Ordinance to circumvent the attendant three-day and four-day rules. The three-day rule sets forth the requirements for advance committee referral. It provides, "A copy of each agenda item shall be furnished to the members of each committee and subcommittee not later than three (3) working days before a vote may be called on the item." Miami-Dade County, Fla., Code Ch. 2, Art. I, § 2-1, R. 4.01(n) (2020). The four-day rule governs

6

agenda calendaring. It states, "A copy of each agenda item shall be furnished to the members of the commission not later than four (4) working days before a vote may be called on the item." Id. at R. 5.05(c).

The COVID Ordinance suspended both of these provisions, providing in pertinent part:

> [N]otwithstanding any rule or procedure to the contrary, during the pendency of a state of emergency (i) declared by the County Major or (ii) declared by the Governor affecting the County, the chairperson may place any matter directly on the agenda of the county commission without committee review regardless of whether the matter has been previously (i) assigned to, (ii) referred to, (iii) considered by, or (iv) scheduled for a public hearing before a committee. . . . *The foregoing matters shall not be subject to the 3-day or 4-day rules.*

Id. at R. 4.01(k) (emphasis added). Consistent with this language, the COVID Ordinance engrafts specific exceptions on the three-day and four-day subsections for "emergency matters, matters during declared states of emergency, and time sensitive matters, as set forth in rule 4.01(k)." Id. at R. 4.01(k), 5.05(c).

The COVID Ordinance is not limited by its terms to emergencies. Instead, it broadly encompasses all matters arising "during declared states of emergency." The Village, however, relies upon a pre-vote discussion among the commissioners regarding the eleventh-hour calendaring, along with the "whereas" clauses reflected in the preamble of the ordinance, for the

7

proposition that the COVID Ordinance was only intended to target urgent matters.

It is true that the recital clauses repeatedly reference exigencies created by the pandemic. But it is equally true that "[i]n interpreting an ordinance, the starting point of our analysis is the ordinance's plain language," and we must "not resort to other rules of statutory construction when the ordinance is unambiguous." See Hollywood Park Apartments S., LLC v. City of Hollywood, 361 So. 3d 356, 361 (Fla. 4th DCA 2023). And here, the COVID Ordinance is plainly amendatory as to all "matters during declared states of emergency." Hence, the additional language in the whereas clauses does not defeat the ordinance's sweeping scope.

Further, both the three-day and four-day rules are deemed waived unless a commissioner lodges an objection before the Board acts. Miami-Dade County, Fla., Code Ch. 2, Art. I, § 2-1, R. 4.01(n) ("The provisions of this rule shall be deemed waived unless asserted by a commissioner before the committee takes action on the resolution, ordinance, motion or other item in question."); id. at R. 5.05(c) ("The provisions of this rule shall be deemed waived unless asserted by a commissioner before the board takes action on the resolution, ordinance, motion or other item in question."). These limiting provisions divest non-commissioners of the right to assert a violation of the

rules, and regardless, in this case, the record reflects only a preliminary discussion regarding the propriety of proceeding with the vote on the Bridge Resolution. It is axiomatic that no commissioner lodged a formal objection. Consequently, the Board was authorized to proceed forward with the resolution.

**B**

The Village alternatively contends the Bridge Project is fatally flawed because funding was impermissibly accomplished through resolution, rather than ordinance. As the Village correctly observes, under the Charter, all appropriations must ordinarily be made by ordinance:

> The Board shall adopt its own rules of procedure and shall decide which actions of the Board shall be by ordinance or resolution, except as otherwise provided in this Charter and except that *any action of the Board which provides for* raising revenue, *appropriating funds*, or incurring indebtedness (other than refunding indebtedness), or which provides a penalty or establishes a rule or regulation for the violation of which a penalty is imposed *shall be by ordinance*.

Miami-Dade County, Fla., Code Part 1, Art. 1, § 1.02(A) (2020) (emphasis added). Unlike resolutions, ordinances require published notice. Id. at § 1.02(B); see also Miami-Dade County, Fla., Code Part I, Citizens' Bill of Rights § (A)(6) (2020). And here, the Bridge Resolution approved the funding for the Bridge Project.

9

The County responds that the Bridge Project funding was approved by prior ordinance in that reserved, unallocated road impact fees were already appropriated when the Board adopted the fiscal year 2020–2021 County budget. Hence, it argues that it logically follows that the Bridge Resolution did not purport to appropriate funds in the first instance.

"Appropriation" is not defined in the Charter. In accord with guiding authority, we therefore look to the "contemporary, common meaning" of the word. Perrin v. United States, 444 U.S. 37, 42 (1979). The American Heritage Dictionary defines appropriation as "[s]omething appropriated, especially public funds set aside for a specific purpose" or "[a] legislative act authorizing the expenditure of a designated amount of public funds for a specific purpose." The Am. Heritage Dictionary, Appropriation (5th ed. 2022). Garner's Dictionary of Legal Usage similarly defines the term as "a public body's act of voting a sum of money for any of various public purposes." Bryan A. Garner, Garner's Dictionary of Legal Usage 72 (3d ed. 2011); see also Graham v. Haridopolos, 108 So. 3d 597, 603 (Fla. 2013) (citing § 216.011, Fla. Stat. (2007)) ("'Appropriation' is defined as a 'legal authorization to make expenditures for specific purposes within the amounts authorized by law.'"). When read together, these definitions compel the

10

conclusion that an appropriation involves setting apart a defined sum for a specific purpose and public officials may use that amount, but no more.

At the time relevant to our analysis, road impact fees were collected from the respective districts for the purpose of "financing roadway and select transit capacity improvements" within those districts. Miami-Dade County, Fla., Code Ch. 33E, § 33E-12(a) (2020). Fees were then "incorporated into the Miami-Dade County Transportation Planning Organization's adopted long[-]range transportation plan or short[-]range transportation improvement program." Id.

We agree with the general proposition that the fees were initially appropriated when placed in trust, because they were "set aside for [the] specific purpose" of building and improving infrastructure within the respective districts. The Am. Heritage Dictionary, Appropriation (5th ed. 2022). We further agree that the Bridge Resolution identified unallocated funds in "the Reserves for Future Capital Projects category of the Transportation and Public Works Impact Fee Program-Roadway Construction, Fund CI 340" in the fiscal year 2020–2021 budget. Nonetheless, there is no per se rule that funds are only appropriated once, and the Village presents a colorable argument that the specific reserve

11

earmarked for the Bridge Project could be construed as a successive appropriation.

We need not resolve this issue, however, as it is not dispositive on this record. As the trial court correctly observed, two alternative independent bases support the County's course of conduct. First, Florida law sets forth a de facto exception to the general rule that appropriation must be made by ordinance, rather than resolution. See § 129.06(2), Fla. Stat. (2021). To that end, section 129.06(2)(c) provides that "[t]he reserve for future construction and improvements may be appropriated by *resolution* of the board for the purposes for which the reserve was made." § 129.06(2)(c), Fla. Stat. (emphasis added). And here, the anticipated expenditure of unencumbered road impact fees was consistent with the purpose for which the reserve was made. Hence, a resolution was statutorily authorized. See Alachua County v. Watson, 333 So. 3d 162, 166 (Fla. 2022).

Second, the Board cured any asserted procedural infirmities when it adopted Ordinance Nos. 21-41 and 21-98, following a public hearing. See Forte v. Miami-Dade County, 271 So. 3d 155, 157 (Fla. 3d DCA 2019). The ordinances approved and adopted fiscal year 2021–2022 mid-year budget adjustments and amendments, including the specific allocation of $3.1 million from the Reserve for Future Capital Projects category of the

12

Department of Transportation and Public Works Road Impact Fee Program for the Bridge Project. The Board was authorized by both statute and Charter to adopt an ordinance amending the fiscal year 2020–2021 budget. § 129.06(2), Fla. Stat. ("The board at any time within a fiscal year may amend a budget for that year . . . ."); Miami-Dade County, Fla., Code Part 1, Art. 1, § 1.02(A) (2020); see also id. at § 1.01(A)(21) ("The Board's powers shall include but shall not be restricted to the powers to: . . . [e]xercise all powers and privileges granted to municipalities, counties, and county officers by the Constitution and laws of the state, and all powers not prohibited by the Constitution or by this Charter."). Hence, even assuming the Bridge Resolution was defective, the budgetary amendment operated as a "curative" measure. See Coon v. Bd. of Pub. Instruction of Okaloosa Cnty., 203 So. 2d 497, 499 (Fla. 1967); County of Orange v. Webster, 546 So. 2d 1033, 1036 (Fla. 1989).

### III

In closing, we reiterate that the County was and is the ultimate decider as to the necessity of the Bridge Project. Because its actions were consistent with the applicable regulatory framework, it acted within its purview in approving the construction. We therefore find no reversible error and affirm in all respects.

Affirmed.